# EXHIBIT A



**LAW OFFICE**
**OF**
**MICHAEL O. SHEA**

451 MAIN STREET

WILBRAHAM, MA 01095

TEL: 413.596.8005

FAX: 413.596.8095

July 25, 2005

**VIA FACSIMILE & MAIL**
**FACSIMILE NO.: (401) 553-6850**
Neal J. McNamara, Esquire
Holland & Knight, LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Re:    *Susan Mount v. Zale Delaware, Inc.—Federal District Court*
       *Civil Action No. 04-30152-MAP*

Dear Attorney McNamara,

I am writing pursuant to Local Rules 7.1 and 37.1, to address a number of outstanding discovery issues that have been raised by the Defendant's Responses to Interrogatories and the Defendant's Responses to Requests for Production of Documents in the above-referenced case. I am requesting a discovery conference be held by telephone on Tuesday, July 26, 2005 at 10:00 a.m.

**Defendant's Responses to Plaintiff's First Set of Interrogatories**

Interrogatory No. 2 requested that the Defendant:

> Please identify all persons of whom you have made inquiry in answering these Interrogatories and, if any such person supplied you with information that you used in answering these Interrogatories, specify such information and the Interrogatory to which it applies.

The Defendant responded, "I relied on my review of documents that are being produced to plaintiff." The Defendant failed to state whether it made inquiry with any person regarding the Interrogatories and if such person supplied information. Similarly, if any person provided such information, the Defendant failed to specify the information and the Interrogatory to which it applies. Accordingly, the Plaintiff requests that the Defendant supplement its Response to Interrogatory No. 2.

Interrogatory No. 8 requested that the Defendant:

> Please state in detail all facts relating to when and where and how any policies concerning discrimination and FMLA leave were posted by the Defendant at the Plaintiff's former employment location during the time that she was employed by the Defendant, describe them in detail and attach any such policies to your answer.

Susan Mount v. Zale Delaware, Inc.
Neal J. McNamara, Esq.
July 22, 2005
Page 2 of 7

The Defendant responded, "All such policies were, from the time the store opened, posted in the back area of the store in which plaintiff worked." The Defendant has failed to describe such policies in detail and failed to attach such policies in its answer. The Defendant should supplement its response to include such requested information and documentation.

Interrogatory No. 9 states:

Please describe the job performances of all employees of the Defendant in the same or similar position as the Plaintiff, during the time that she was employed with the Defendant, and state their corresponding names and job titles and attach all documents which indicate performance ratings and work schedules and attendance records.

The Defendant objected to this Interrogatory on numerous grounds, including that it is vague, ambiguous, overbroad, and not calculated to lead to the discovery of admissible evidence. Clearly, the Plaintiff is entitled to receive information relating to performance ratings and work schedules/attendance records of similarly-situated employees that were employed by the Defendant during the time that the Plaintiff was employed with the Defendant, as such information is highly relevant to the Plaintiff's claims. The Plaintiff is willing to limit this Interrogatory to include only those employees that were in employed in the same geographical location (region) that the Plaintiff was employed, provided the Defendant withdraw its objections to the same and fully supplement its Response to this Interrogatory.

Interrogatory No. 13 requested:

Please identify all handicap discrimination and FMLA claims filed against Zale Delaware, Inc. in the last ten years, and state:

(a)    the name, address, job title and telephone number of each complaining party;
(b)    the forum in which each such complaint was filed;
(c)    the date of the filing of each such complaint;
(d)    the outcome of each such cause of action; and
(e)    the attorney representing each such complaining party, if applicable.

The Defendant objected to this Interrogatory on the grounds that it is overbroad and is not calculated to lead to the discovery of admissible evidence. The Plaintiff fails to see how this Interrogatory is overbroad, as the requested information related specifically to handicap and FMLA claims only that have been filed against the Defendant in the last ten years. Additionally, the information requested is highly relevant to the subject matter of the Plaintiff's case. The Plaintiff is entitled to receive such information, as there is ample case law supporting the proposition that in employment discrimination cases, plaintiffs are entitled to receive information about complaints filed against their former employers. Accordingly,

Susan Mount v. Zale Delaware, Inc.
Neal J. McNamara, Esq.
July 22, 2005
Page 3 of 7

the Plaintiff requests that the Defendant withdraw its objections to this Interrogatory and fully supplement its Response.

Interrogatory No. 14 states:

Please identify all disabled and/or physically impaired employees terminated by Zale Delaware Inc. in the last five years versus non-disabled employees of the Defendant terminated in the last five years and state their corresponding names, ages, job titles, and reason given for termination.

The Defendant objected to this Interrogatory on the grounds that it is vague, ambiguous, overbroad violates the privacy rights of former employees, and is not calculated to lead to the discovery of admissible evidence. Again, the information requested is highly relevant to the subject matter of the Plaintiff's case. To the extent the Defendant is concerned about protecting third parties' privacy with regard to this Interrogatory, I propose that we enter into a mutually-agreeable protective order/confidentiality agreement on behalf of our respective clients. Additionally, the Plaintiff is willing to limit this Interrogatory to include only those employees that were in employed in the same geographical location (region) that the Plaintiff was employed, provided the Defendant withdraw its objections to the same and fully supplement its Response to this Interrogatory.

Interrogatory No. 15 requested that the Defendant:

Please describe in detail the financial impact, to Zale Delaware Inc., of the Plaintiff taking the Family Medical Leave Act (FMLA) leave, and state:

(a)    in detail which expenses affect the financial profit or loss of the location where the Plaintiff last worked;

(b)    whether or not the expense of employees on disability and/or Family Medical Leave Act have affected the financial profit or loss of the location, and

(c)    whether the financial profit or loss of the location affects the overall income of each manager.

The Defendant objected to this Interrogatory on the grounds that it is vague and ambiguous, and not calculated to lead to the discovery of admissible evidence. This Interrogatory is specific, clear, is calculated to lead to the discovery of relevant information and relates only to the Plaintiff and the financial impact to the Defendant of the Plaintiff taking leave under FMLA. Accordingly, the Defendant should withdraw its objections and fully supplement its Response.

Interrogatory No. 16 states:

Please describe in as much detail as possible the policies of Zale Delaware, Inc. regarding handicap discrimination and FMLA leave for employees in the last ten

Susan Mount v. Zale Delaware, Inc.
Neal J. McNamara, Esq.
July 22, 2005
Page 4 of 7

years, and state when and how those policies have changed, if applicable, and attach all such versions of the policies to your answer.

The Plaintiff acknowledges that the Defendant stated in its Response that it will, subject to its objection, produce copies of the relevant policies in effect during the time that plaintiff was an employee. The Plaintiff now requests that it withdraw its objections to this Interrogatory and supplement its Response accordingly.

Interrogatory No. 17 requested that the Defendant:

Please identify all employees hired by the Defendant to handle any and/or all of the Plaintiff's job functions since her termination of employment, and state:

(a)     the name, age and address of each such employee;
(b)     the date each such employee was hired by the Defendant;
(c)     the job responsibilities assumed by each such employee; and
(d)     the rate of pay and benefits of each such employee.

The Defendant partially responded to this Interrogatory and then objected to providing additional personal information as to Ms. Till and Ms. Laffin on the grounds that the portions of the Interrogatory requesting such information are overbroad and are not calculated to lead to the discovery of admissible evidence. The Defendant should withdraw its objections to providing information about employee(s) hired to replace the Plaintiff. This inquiry is not overbroad and is calculated to lead to the discovery of admissible evidence. Furthermore, the qualifications of replacement employees are relevant in discrimination cases, given that the decision to terminate and/or replace an employee may have been influenced by the replacement employee's qualifications, among perhaps other compelling reasons. To the extent the Defendant is concerned about protecting third parties' privacy with regard to this Interrogatory, I propose that we enter into a mutually-agreeable protective order/confidentiality agreement on behalf of our respective clients. Accordingly, the Defendant should withdraw its objections and fully supplement its Response to this Interrogatory.

Interrogatory No. 18 states:

Please describe in as much detail as possible the Defendants' disciplinary and leave policies that were in effect in the last ten years.

The Plaintiff acknowledges that the Defendant stated in its Response that it will, subject to its objection, produce copies of the relevant policies in effect during the time that plaintiff was an employee. The Plaintiff now requests that it withdraw its objections to this Interrogatory and supplement its Response accordingly.

Susan Mount v. Zale Delaware, Inc.
Neal J. McNamara, Esq.
July 22, 2005
Page 5 of 7

### Defendant's Responses to Plaintiff's First Request for Documents to Defendant

Request No. 2 seeks:

All documents in the personnel files (and related documents) of any and all
employees who were hired by the Defendant and/or retained by the Defendant to
perform any of the Plaintiff's former job responsibilities.

The Defendant objected to this Request on numerous grounds and failed to provide
the requested documentation. Again, the Defendant should withdraw its objections to
providing information about employee(s) hired to replace the Plaintiff. This Request is not
vague and ambiguous and is calculated to lead to the discovery of admissible evidence.
Furthermore, the qualifications of replacement employees are relevant in discrimination
cases, given that the decision to terminate and/or replace an employee may have been
influenced by the replacement employee's qualifications, among perhaps other compelling
reasons. To the extent the Defendant is concerned about protecting third parties' privacy with
regard to this Request, I propose that we enter into a mutually-agreeable protective
order/confidentiality agreement on behalf of our respective clients. Accordingly, the
Defendant should withdraw its objections and fully supplement its Response with the
requested documents.

Request No. 3 asks the Defendant to produce:

All documents relating and/or referring to complaints of discrimination against the
Defendant, and/or any of its employees in their capacity as employees and/or agents
of the Defendant, in the last 10 years.

The Defendant objected to this Request on the grounds that it is overbroad and is not
calculated to lead to the discovery of admissible evidence, and failed to provide the requested
documentation. The documents requested are highly relevant to the subject matter of the
Plaintiff's case. The Plaintiff is entitled to receive such information, as there is ample case
law supporting the proposition that in employment discrimination cases, plaintiffs are entitled
to receive information about complaints filed against their former employers. The Plaintiff
is willing to limit this Request to include only documents relating complaints of handicap
discrimination and FMLA claims against the Defendant and/or its employees in the last 10
years, provided the Defendant withdraw its objections and fully supplement its Response.

Request No. 7 sought:

Copies of any and all documentation, correspondence and/or records which the
Defendant believes support its defenses raised in this litigation.

The Defendant objected to this Request on the ground that it is vague, ambiguous and
overbroad, and then stated that, subject to its objections, "responsive non-privileged
documents are attached." While the Plaintiff acknowledges that certain responsive

Susan Mount v. Zale Delaware, Inc.
Neal J. McNamara, Esq.
July 22, 2005
Page 6 of 7

documents have been produced, the Defendant has failed to state whether any documents have been withheld subject to assertions of privilege. If such documentation has been withheld, the Plaintiff requests that the Defendant describe said documentation, including the date, authors(s) and recipient(s), and the general subject matter of the documentation. The Defendant should supplement its response accordingly, or disclose that no such documents exist.

The Plaintiff echoes this outstanding discovery request concern with respect to Request Nos. 8, 10, 13, 16, 17 and 18, in that the Plaintiff requests that the Defendant state for each whether any documents have been withheld subject to assertions of privilege. If such documentation has been withheld, the Plaintiff requests that the Defendant describe said documentation, including the date, authors(s) and recipient(s), and the general subject matter of the documentation. The Plaintiff requests that the Defendant supplement its Responses accordingly or disclose that no such documents exist.

Request No. 12 asks the Defendant to produce:

Copies of all documents that relate and/or refer to the job performances of all employees in the same or similar position as the Plaintiff, during the time that she was employed with the Defendant, including but not limited to the personnel files of all such employees, attendance records and performance standards.

The Defendant objected to this Request on numerous grounds, including that it is vague, ambiguous, overbroad, and not calculated to lead to the discovery of admissible evidence. Clearly, the Plaintiff is entitled to receive information relating to performance ratings of similarly-situated employees that were employed by the Defendant during the time that the Plaintiff was employed with the Defendant, as such information is highly relevant to the Plaintiff's claims and whether such was treated less favorably on the basis that she is in a protected class.

Request No. 20 seeks:

Copies of any and all time sheets and attendance records and/or similar such documents relating to all employees who were in the same and/or similar position and/or who handled the same and/or similar job responsibilities as the Plaintiff in the last five years.

The Defendant objected on grounds that this Request is overbroad, violated the privacy interests of Defendant's employees, and is not calculated to lead to the discovery of admissible evidence. Again, to the extent the Defendant is concerned about protecting third parties' privacy with regard to this Request, I propose that we enter into a mutually-agreeable protective order/confidentiality agreement on behalf of our respective clients. The Plaintiff is entitled to receive information regarding the work schedules and attendance records of those similarly-situated employees, as that is directly relevant to the subject matter of the Plaintiff's Complaint. The Plaintiff is willing to limit this Request to include only those employees that

Susan Mount v. Zale Delaware, Inc.
Neal J. McNamara, Esq.
July 22, 2005
Page 7 of 7

were in employed in the same geographical location (region) that the Plaintiff was employed, provided the Defendant withdraw its objections to the same and fully supplement its Response to this Request.

I look forward to speaking with you regarding the foregoing concerns at 10:00 a.m. on Tuesday, July 26, 2005.

Very truly yours,

Michael O. Shea

# EXHIBIT B

# Loislaw Federal District Court Opinions

MARCHESE v. SECRETARY, (E.D.La. 2004)

JEAN MARCHESE ET AL. v. SECRETARY, DEPARTMENT OF THE INTERIOR, MINERALS

MANAGEMENT SERVICE.

Civil Action No. 03-3082, Section "K" (2).

United States District Court, E.D. Louisiana.

October 12, 2004

### ORDER AND REASONS

JOSEPH WILKINSON, Magistrate Judge

This order addresses two related motions: (1) Plaintiffs'
Motion to Compel Discovery, Record Doc. No. 24, and (2)
Defendant's Motion for Protective Order, Record Doc. No. 29.
Defendant's motion for protective order incorporates his
opposition to plaintiffs' motion to compel. Plaintiffs filed both
an opposition to defendant's motion for protective order and a
reply memorandum in support of their own motion.

(A). Plaintiffs' Motion to Compel Discovery, Record Doc. No.
24

Plaintiffs' motion fails to state which of defendant's
discovery responses are deficient and why, which significantly
impedes the court's ability to understand what plaintiffs seek
and to grant any relief. However, the last sentence of
plaintiffs'
**Page 2**
memorandum asks the court to compel more responsive answers to
any of their first set of interrogatories, requests for
production of documents and requests for admissions served on
June 14, 2004 (Plaintiff's Exh. 1), which seek information
relating to the decisions of Chris Oynes, director of the Gulf of
Mexico OCS Region of the Minerals Management Service, concerning
promotions and pay grades. Accordingly, the court addresses
plaintiffs' motion to compel primarily in that context.

**IT IS ORDERED** that plaintiffs' motion is GRANTED IN PART AND
DENIED IN PART, as follows.

Information concerning Oynes's involvement in the specific
employment decisions regarding these two plaintiffs, which are at
issue in this lawsuit, is "relevant to the claims or defenses of
the parties" and is therefore within the scope of discovery
without any further showing. Fed.R.Civ.P. **26**(b)(1). To the
extent that plaintiffs seek information about Oynes's involvement
in similar decisions regarding employees other than plaintiffs,
that information may be "relevant to the subject matter involved
in the action" and plaintiffs must show good cause to discover
it. Id.

Plaintiffs argue that statistical evidence concerning "defendant's labor force and those who receive promotions and favorable treatment" is relevant in disparate treatment and disparate impact cases. However, based on plaintiffs' complaint, as amended, this

**Page 3**

is solely a disparate treatment case. Although "[s]tatistical evidence can be utilized by an individual disparate treatment plaintiff to help rebut the employer's non-discriminatory explanation . . ., more than statistics are usually necessary to rebut an employer's strong showing of a legitimate, non-discriminatory reason for discharging a particular employee." Bauer v. Albemarle Corp., **169 F.3d 962, 968** (5th Cir. 1999). There are many other evidentiary means available to plaintiffs in the instant case, besides statistical evidence, to prove that they were treated differently. Generally speaking, plaintiffs have failed to show good cause for the extremely broad scope of information they seek from which to create statistical evidence or for other purposes.

Moreover, the majority of the cases cited by plaintiffs at pp. 10-11 of their memorandum do not support their argument for broad discovery of statistical evidence. Either the cases pre-date the burden-shifting framework applicable to plaintiffs' allegations of gender and age discrimination and retaliation, Texas Dep't of Cmty. Affairs v. Burdine, **450 U.S. 248, 252-53** (1981) (clarifying burden of proof originated in McDonnell Douglas Corp. v. Green, **411 U.S. 792, 807** (1973)), they do not address the use of statistical evidence at all, they apply to class actions or they have been reversed.

Nonetheless, "[w]hen a plaintiff must prove intentional discrimination, a district court can abuse its discretion by limiting a plaintiff's ability to show the atmosphere in

**Page 4**

which the plaintiff operated." Kelly v. Boeing Petroleum Servs., Inc., **61 F.3d 350, 358** (5th Cir. 1995) (quotations omitted). Evidence of other wrongs or acts may be admissible to prove, for example, defendant's motive, intent, plan, knowledge or absence of mistake in an employment discrimination case. Fed.R. Evid. **404**(b); Burks v. Oklahoma Pub. Co., **81 F.3d 975, 981** (10th Cir. 1996); Spulak v. K Mart Corp., **894 F.2d 1150, 1156** (10th Cir. 1990) (and cases cited therein); Trevino v. Celanese Corp., **701 F.2d 397, 405** (5th Cir. 1983); Harpring v. Continental Oil Co., **628 F.2d 406, 409** (5th Cir. 1980); Koppman v. South Cent. Bell Tel. Co., No. 90-4503, 1992 WL 280793, at *7-8 (E.D. La. July 12, 1992) (Clement, J.).

On the other hand, this is a relatively simple case of allegations of discriminatory failure to promote, retaliation and Equal Pay Act violations. Courts have recognized that Title VII plaintiffs do not have an unlimited ability to delve into their employers' policy and personnel records, even when they have alleged a pattern of discrimination. "[The court's] discretion to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Scales v. J.C. Bradford & Co., **925 F.2d 901, 906** (6th Cir. 1991) (citing Trevino,

701 F.2d at 405); see also Childers v. Slater, No. 97-853RMU/JMF, 1998 WL
429849, at *4-5 (D.D.C. May 15, 1998) (plaintiff's request for
information about all discrimination
**Page 5**
actions filed against entire government agency "sweeps too
broadly;" "courts must set reasonable boundaries on the type of
discovery permissible in Title VII actions;" discovery limited to
relevant time period, particular type of discrimination alleged
in complaint and divisions where plaintiff and her supervisors
worked) (citing Trevino, 701 F.2d at 405, and cases that
imposed similar limitations).

Finally, it is well established that other claims of
discrimination against a defendant are discoverable if limited to
the (a) same form of discrimination, (b) the same department or
agency where plaintiff worked, and (c) a reasonable time before
and after the discrimination complained of. Mitchell v. National
R.R. Passenger Corp., 208 F.R.D. 455, 460 (D.D.C. 2002).
"Although acts occurring before the relevant statute of
limitations period may still be admissible to prove a plaintiff's
timely claim, the request must be reasonably limited. . . . Ten
years is an inordinate length of time to support plaintiffs'
pattern of discrimination theory. . . . Thus, in order to
establish a pattern of discrimination, three years is a
reasonable time in which to allow discovery." Glenn v.
Williams, 209 F.R.D. 279, 282 (D.D.C. 2002) (citing cases).

"[N]ot only must there be a `temporal limitation,' but also a
`geographic limitation' on the documents requested. Necessarily,
the geographic limitation is the `employing unit.' . . .
[D]iscovery in Title VII actions may appropriately be limited to
employment
**Page 6**
units, departments, and sections in which there are employees who
are similarly situated to the plaintiff." Id. at 281 (citing
cases).

With these principles in mind, **IT IS ORDERED** as follows with
respect to plaintiffs' first set of discovery requests
(Plaintiff's Exh. ·1) and defendant's responses (Plaintiff's Exh.
2).

Defendant's objections to plaintiffs' Interrogatory Nos. 1 and
4, as they relate to Oynes, are overruled. However, this has no
effect on defendant's answers, which state that Oynes had no
involvement in these actions.

Defendant's objection to plaintiffs' Interrogatory No. 3, as it
relates to Oynes, is overruled. Defendant must respond. If there
were no such "occasions or contacts" with either plaintiff,
defendant should so state.

Defendant's objection to plaintiffs' Interrogatory No. 5, as it
relates to Oynes, is overruled. Defendant's objection to
plaintiffs' Interrogatory No. 5, as it relates to the time period
and the grade levels requested by the interrogatory, is
sustained. These are unlimited and therefore excessively broad.
Accordingly, defendant must respond only for the time period
January 1, 2001 to the present and only for persons at grade

levels GS-9 through GS-11, which are the grade levels from and to which plaintiffs claim they should have been upgraded.
**Page 7**

**IT IS FURTHER ORDERED** that the same time period and grade level limitations shall apply to all of plaintiffs' discovery requests.

**IT IS FURTHER ORDERED** that defendant must provide plaintiffs with a verification of their original Answers to Interrogatories and must verify their supplemental Answers to Interrogatories as required by Fed.R.Civ.P. **33**(b)(2).

Defendant's response to plaintiffs' Request for Production No. 1 is insufficient. It is not a valid response to state that some documents are already in plaintiffs' possession. Defendant must provide a supplemental response that identifies all which documents are responsive to this request and states that such documents have been or will be made available to plaintiffs for inspection and copying, or states that no responsive documents are in the possession, custody or control of defendant.

Defendant must also provide a supplemental response to plaintiffs' Request for Production No. 1 as necessary to comply with the request in light of any of the overruled objections and court orders to supplement his Answers to Interrogatories discussed above.

Defendant's objections to plaintiffs' Request for Production Nos. 2 and 3, as they relate to Oynes, are overruled. However, the time period and the grade levels requested are excessively broad and are limited as previously stated above. Furthermore, defendant
**Page 8**
is not required to create any documents in response to any request for production of documents. If no responsive documents exist within his possession, custody or control, defendant should simply say so.

(B). Defendant's Motion for Protective Order, Record Doc. No. 29

Defendant's motion for protective order is GRANTED IN PART AND DENIED IN PART, as follows.

First, defendant's motion is granted as to plaintiffs' requests for admissions, which are grossly excessive and repetitive. **IT IS ORDERED** that plaintiffs are limited to propounding 25 requests for admissions. Their first set of 15 numbered requests for admissions, including subparts, attached to their motion as Plaintiff's Exh. 1, actually contained 24 requests. Thus, plaintiffs may choose one more request for admissions from the nearly 200 requests that they propounded and ask defendant to admit or deny that one.

Second, defendant's objection to creating any documents in response to requests for production of documents is sustained. Rule 34 does not require a party responding to discovery to create responsive materials, only to produce those in its

possession, custody or control.
**Page 9**

   Third, defendant's objection to producing information
concerning Oynes's involvement in the employment decisions
regarding plaintiffs that are at issue in this lawsuit, or
Oynes's involvement in comparable complaints of age or gender
discrimination or retaliation within the relevant time period and
employing unit, is overruled. If no such information exists,
defendant should say so. Otherwise, if Oynes had any personal
involvement in those decisions or actions, responsive information
concerning his involvement must be produced.

   Defendant's objection that Request for Production Nos. 3, 8,
14, 20 and 24 of plaintiffs' second set of discovery requests are
overly broad is sustained. All of plaintiffs' discovery requests
are limited to personnel within the section supervised by Alex
Alvarado and to grievances or complaints based on age or gender
discrimination or retaliation only.

   Furthermore, Request for Production No. 1 is too broad when it
states "in any [way] related to your Answers to Interrogatories
or denials of Requests for Admissions." However, defendant must
respond by identifying and providing for inspection any documents
upon which it relied in preparing its Answers to Interrogatories
and denials of Requests for Admissions.
**Page 10**

   Defendant's motion is granted as to plaintiffs' Request for
Production Nos. 13, 16, 17, 18 and 26 of plaintiffs' second set
of discovery requests. These requests are overly broad in scope
and seek information that is not reasonably calculated to lead to
the discovery of admissible evidence.

   Defendant's motion is denied in part as to plaintiffs' Request
for Production No. 21. Defendant must respond insofar as such
documents exist related to age or gender diversity within the
Gulf of Mexico Region.

   Defendant's motion is denied in part as to plaintiffs' Request
for Production No. 25. Pay rates for GS-12 and GS-13 levels are
relevant to plaintiffs' proof of lost future pay opportunities.
However, the request is both overly broad and vague in part.
Defendant need not produce personnel records nor any
"documentation that would be used to calculate future loss of
pay," but must produce documents that establish such pay rates
during the relevant time period.

   As to Request for Production Nos. 27 and 28, defendant asserts
that vacancy announcement S-99-46 relates to the "anecdotal case
of Claudia Rogers" and is irrelevant to plaintiffs' case. The
court has no knowledge of who Claudia Rogers is or the
circumstances of her "anecdotal case." Request for Production No.
29 asks for all advertised vacancy announcements. Request for
Production No. 31 concerns cancelled
**Page 11**
vacancy announcements. Plaintiffs' complaint, as amended, does
not allege any discrimination or retaliation against them in
connection with any vacancy announcements. Accordingly, these

requests appear on the current record to seek irrelevant information. Defendant's motion is granted as to these requests.

Defendant's motion is denied as to his objection that personnel records are protected by the Privacy Act, **5 U.S.C. § 552a**(b). Despite defendant's argument that plaintiffs should be held to a heightened standard of relevance to overcome this statute, it is well established that the Privacy Act

> does not create a qualified discovery privilege as that concept is generally understood, and we find no basis in the statute or its legislative history for inferring one. Nor does the Act create any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery. Rather, the plain language of the statute permits disclosure "pursuant to the order of a court of competent jurisdiction." Neither the statute nor anything in its legislative history specifies the standards for issuance of such a court order. We therefore find no basis for inferring that the statute replaces the usual discovery standards of the FRCP — in particular, Rules 26 and 45(b) — with a different and higher standard.

Laxalt v. McClatchy, **809 F.2d 885**, **888** (D.C. Cir. 1987) (quoting **5 U.S.C. § 552a**(b)(11)); accord Bustillo v. Hawk, No. 97-WM-445, 1998 WL 299980, at *5 (D. Colo. May 28, 1998); Huang v. Dalton, No. 93-3143, 1994 WL 325944, at *1 (E.D. Pa. June 30, 1994).
**Page 12**

However, discovery of the personnel files of non-party individual employees presents special concerns about the privacy rights of the individuals involved. Balancing the interests of the parties in obtaining relevant discovery against the privacy interests of individual non-parties can best be accomplished by in camera review of the requested files. Atkinson v. Denton Publishing Co., **84 F.3d 144**, **148** (5th Cir. 1996). By reviewing these records in camera I can also make an informed ruling as to their relevance. Accordingly, **IT IS ORDERED** that, if defendant has any responsive personnel files, they must be produced to me no later than **October 22, 2004** for in camera review along with a brief memorandum stating to which request for production the documents are responsive. Thereafter, this part of the motion will be decided on the record without oral argument.

Defendant's motion is denied as to plaintiffs' requests for information regarding settlements of gender and age-related discrimination complaints. Settlement agreements, although inadmissible in evidence for some purposes, are both discoverable and admissible for other purposes. Fed.R. Evid. **408**; 23 C.A. Wright & K.W. Graham, Federal Practice and Procedure § 5308 at 237-38 (1980); Griffin v. Mashariki, No. 96 CIV 6400, 1997 WL 756914, at *2 (S.D.N.Y. Dec. 8, 1997); Glaze v. G & B Marine, Inc., No. 95-1845, 1997 WL 20738, at *1 (E.D. La. Jan. 16, 1997) (Fallon, J.); Collins
**Page 13**
v. Coastline Constr., Inc., No. 92-16, 1992 WL 125328, at *3

(E.D. La. May 25, 1992) (Schwartz, J.); <u>Koch Indus., Inc. v. Columbia Gas Transmission Corp.</u>, No. 89-2156, 1990 WL 72789, at *2 (E.D. La. May 29, 1990) (Sear, J.).

"Although litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, or was filed under seal, discovery of such an agreement is only appropriate if it [is relevant as defined by Fed.R.Civ.P. **26**(b)]." <u>ABF Capital Mgmt. v. Askin Capital</u>, No. 96 Civ. 2978(RWS), 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) (Sweet, J.).

The information sought is reasonably calculated to lead to the discovery of admissible evidence. Although the settlement negotiations and agreements, if any, may be inadmissible to prove liability,**[fn1]** factual information underlying other claims may be relevant and admissible in the instant action on issues such as whether defendant had the intent to discriminate based on race or gender and whether defendant's antidiscrimination policies were adequate. Fed.R. Evid. **404**(b); <u>Butta-Brinkman v. FCA Int'l, Ltd.</u>, 164 F.R.D. 475, 476 (N.D.Ill. 1995).
**Page 14**

Further, I agree with the reasoning of the courts in <u>Wendt v. Walden Univ., Inc.</u>, No. CIV. 4-95-467, 1996 WL 84668 (D. Minn. 1996), and <u>Kalinauskas v. Wong</u>, 151 F.R.D. 363 (D. Nev. 1993), that the public interest is better served by permitting discovery of facts about similar claims against a party in a discrimination suit despite the private agreements of litigants not to disclose such information. "While parties have the freedom to contract, courts must carefully police the circumstances under which legitimate areas of public concern are concealed. Defendants should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another." <u>Wendt</u>, 1996 WL 84668 at *2 (citing <u>Kalinauskas</u>, 151 F.R.D. at 365-66); <u>accord Channelmark Corp. v. Destination Prods. Int'l, Inc.</u>, No. 99 C 214, 2000 WL 968818, at *5 (N.D. Ill. July 7, 2000). The interests of defendant and the other complainants (if any) in preserving the confidentiality of their interactions can be served by an appropriate protective order in this litigation.

**IT IS FURTHER ORDERED** that any settlement agreements or personnel records produced by defendant to plaintiffs shall be subject to the following protective order. All information produced in accordance with this order must be marked and kept confidential and used only for purposes of this litigation and must not be disclosed to any one except(a) one individual non-lawyer representative of each party to this litigation,
**Page 15**
(b) the parties' counsel of record in this action, and (c) experts retained in connection with this litigation whose testimony may be presented at trial. All persons to whom such information is disclosed must sign an affidavit that must be filed into the record, agreeing to the terms of the protective order and submitting to the jurisdiction of this court for enforcement of those terms. If any party seeks to add other terms to this protective order, counsel must confer immediately and submit by motion any proposed protective order.

IT IS FURTHER ORDERED that defendant must provide plaintiffs with his verification of his original Answers to Interrogatories, his supplemental responses to plaintiffs' first set of discovery requests and his responses to plaintiffs' second set of discovery requests, in conformance with the rulings herein, within ten days of entry of this order.

[fn1] But see Lesal Interiors, Inc. v. Resolution Trust Corp., 153 F.R.D. 552, 561 (D.N.J. 1994) (suggesting that Rule 408 only applies to exclude settlements of the claims at issue in the instant litigation) (citing Bank of Am. Nat'l Trust v. Rittenhouse, 800 F.2d 339 (3d Cir. 1986)).

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT C

# Loislaw Federal District Court Opinions

OWENS v. SPRINT/UNITED MANAGEMENT COMPANY, (Kan. 2004)

CAMI V. OWENS, Plaintiff, v. SPRINT/UNITED MANAGEMENT COMPANY, Defendant.

Civil Action No. 03-2371-JWL-DJW.

United States District Court, D. Kansas.

June 2, 2004

### MEMORANDUM AND ORDER

DAVID WAXSE, Magistrate Judge

This matter comes before the Court on Plaintiff's Motion to
Compel Answers to Interrogatories and Production of Documents
(doc. 36). Plaintiff requests that Defendant be compelled to
provide complete answers to her Opening Interrogatories and to
produce documents responsive to her First Request for Production
of Documents. She further requests an award of her expenses and
sanctions, if appropriate. Plaintiff has filed a Certificate of
Compliance (doc. 38) of her efforts to confer with Defendant's
counsel prior to filing this motion. For the reasons set forth
below, Plaintiff's motion is granted in part and denied in part.

## I. Introduction and Brief Factual Background

Plaintiff brings this action against Defendant asserting claims
for sex discrimination under Title VII of the Civil Rights Act of
1964,**[fn1]** and age discrimination under the Age
Discrimination in Employment Act
Page 2
("ADEA").**[fn2]** She alleges that Defendant demoted her from
her position as Senior Director of International Service
Management ("ISM") to a lower-grade managerial position based
upon her gender and age when it relocated her Director's position
to Virginia and filled it with a younger, male employee.
Plaintiff's former position as Senior Director of International
Service Management is organized within Defendant's Business
Support Services unit, which is a sub-unit of Defendant's Global
Markets Group.

On November 24, 2003, Plaintiff served Defendant with her
Opening Interrogatories and First Request for Production of
Documents.**[fn3]** Defendant served its initial answers and
objections to Plaintiff's discovery requests on December 23,
2003.**[fn4]** On January 19, 2004, Defendant served its First
Supplemental Answers and Objections to Plaintiff's Opening
Interrogatories.**[fn5]** After attempting to confer with
Defendant to resolve the issue without court action, as required
by Fed.R.Civ.P. **37**(a)(2)(A) and D. Kan. Rule 37.2, Plaintiff
filed the instant motion to compel on January 22, 2004.

## II. Discovery Requests at Issue

Plaintiff's Motion to Compel Answers to Interrogatories and
Production of Documents requests that Defendant be compelled to
provide complete answers to Plaintiff's Opening Interrogatories
Nos. 3, 4, 5, 8, 9, 11, and 12 and produce documents responsive
to her First Requests for Production Nos. 9,
**Page 3**
10, 12, 17, and 20. Since Plaintiff filed her motion, it now
appears that the parties have been able to informally resolve the
majority of their disputes on these discovery requests. Thus, the
Court will only address the parties' two remaining open disputes,
i.e., Plaintiff's Opening Interrogatory No. 3/Request No. 17 and
Request Nos. 9 and 10.

### A. Opening Interrogatory No. 3 and First Request for Production No. 17

Plaintiff's Opening Interrogatory No. 3 inquires whether
Defendant, at any time since March 2000 to the present date, has
been the subject of any investigation by any local, state, or
federal agency as to its employment practices, including any
charges of age discrimination and sex discrimination, other than
those filed by Plaintiff. Plaintiff's First Request for
Production of Documents No. 17 asks for "[a]ny and all documents
relating to other charges of age discrimination and/or sex
discrimination filed against defendant with any state or federal
regulatory body or court, from January 2000 to present."

In both its initial and supplemental Answers and Objections to
Plaintiff's Opening Interrogatory No. 3, Defendant objected on
the grounds that the interrogatory seeks information which is
irrelevant and not reasonably calculated to lead to the discovery
of admissible evidence. It further objected on the grounds that
the scope of the interrogatory is overly broad and seeks
information which is shielded from discovery under the attorney
client privilege and/or the attorney work product doctrine.
Defendant objected to Request No. 17 to the extent the request
seeks information that is irrelevant and no treasonably
calculated to lead to the discovery of admissible evidence.

*1. Relevancy objections*

Defendant objected to both Interrogatory No. 3 and Request for
Production No. 17 on the grounds that they seek information which
is irrelevant and not reasonably calculated to lead to the
**Page 4**
discovery of admissible evidence. Plaintiff argues that the
testimony of other employees about their treatment by defendant
is relevant to the issue of the employer's discriminatory intent.

Federal Rule of Civil Procedure **26**(b)(1) provides that
"[p]arties may obtain discovery regarding any matter, not
privileged, that is relevant to the claim or defense of any
party. . . . Relevant information need not be admissible at the
trial if the discovery appears reasonably calculated to lead to
the discovery of admissible evidence."**[fn6]** Relevancy is
broadly construed, and a request for discovery should be
considered relevant if there is "any possibility" that the
information sought may be relevant to the claim or defense of any
party.**[fn7]** A request for discovery should be allowed "unless

it is clear that the information sought can have no possible
bearing" on the claim or defense of a party.**[fn8]** When the
discovery sought appears relevant, the party resisting the
discovery has the burden to establish the lack of relevance by
demonstrating that the requested discovery (1) does not come
within the scope of relevance as defined under Fed.R.Civ.P.
**26**(b)(1), or (2) is of such marginal relevance that the potential
harm occasioned by discovery would outweigh the ordinary
presumption in favor of broad disclosure.**[fn9]** Conversely,
when the request is overly broad on its face or when relevancy is
not readily apparent, the party seeking the discovery has the
burden to show the relevancy of the request.**[fn10]**
**Page 5**

Discovery in employment discrimination cases depends heavily
upon the particular circumstances of the case.**[fn11]** The
Tenth Circuit has indicated that discovery in discrimination
cases should not be narrowly circumscribed.**[fn12]** The scope
of discovery is particularly broad in a Title VII case, and "an
employer's general practices are relevant even when a plaintiff
is asserting an individual claim for disparate
treatment."**[fn13]** This desire to allow broad discovery,
however, is not without limits, and the trial court is given wide
discretion in balancing the needs and rights of both plaintiff
and defendant.**[fn14]** Information that may establish a pattern
of discrimination is discoverable even when the action seeks only
individual relief.**[fn15]** When the motive or intent of a
defendant employer is at issue, information concerning its
conduct towards employees other than the plaintiff is
relevant.**[fn16]**

In this case, the Court determines that these discovery
requests, which ask for information on other charges of age and
sex discrimination filed against Defendant with any state or
federal regulatory body or court, seek information which is
relevant and reasonably calculated to lead to the discovery of
admissible
**Page 6**
evidence. Defendant's relevancy objections to Plaintiff's Opening
Interrogatory No. 3 and First Request for Production of Documents
No. 17 are therefore overruled.

*2. Overly broad objection — work unit*

Defendant also contends that Plaintiff's Opening Interrogatory
No. 3 and Request No. 17 seek information beyond the permissible
scope of discovery. It argues that the discovery requests should
be limited in scope to the geographic location in which Plaintiff
worked and the work unit within Defendant that employed
Plaintiff. Defendant states that at the time of the alleged
discrimination Plaintiff was employed in its Business Support
Services unit. It argues that Plaintiff's discovery requests
seeking information relating to other sex and age discrimination
charges and investigations should be restricted to its Business
Support Services, the work unit within which Plaintiff was
employed at the time of the alleged discrimination.

In her reply brief, Plaintiff argues that the appropriate limit
on the scope of the discovery requests should be Defendant's

Global Markets Group, not the sub-unit called Business Support
Services. She cites this Court's decision in *Doebele v. Sprint
Corporation*[fn17] in support of her position that she should
be allowed discovery of other charges and investigations of
discrimination originating from the "business unit" that employs
her, i.e., Defendant's Global Markets Group.

In Defendant's sur-reply, it maintains that the Court should
resolve this issue by determining whether its Global Markets
Group or Business Support Services would be the most likely
source of relevant information relating to its treatment of other
employees. Defendant urges the Court to define
**Page 7**
"business unit" as its Business Support Services unit for
purposes of this motion. It asserts that there are more than
20,000 employees in its Global Markets Group. Of that number, the
large majority of employees in its Global Markets Group are not
similarly situated to Plaintiff. It asserts that its Global
Markets Group is too large and would encompass many employees who
are extremely remote to Plaintiff.

When addressing overly broad objections to discovery requests,
courts have limited the geographic scope of discovery.[fn18]
In non-class action employment discrimination cases, the standard
for determining the geographic scope of discovery focuses on "the
source of the complained discrimination — the employing unit or
work unit."[fn19] In the absence of any evidence that there
were hiring or firing practices and procedures applicable to all
the employing units, discovery may be limited to plaintiff's
employing unit.[fn20] Discovery may be expanded from the
Plaintiff's employing unit, however, if the plaintiff can show
the requested information is "particularly cogent" to the
matter[fn21] or if the plaintiff can show a "more
particularized need for, and the likely relevance of, broader
information."[fn22]
**Page 8**

In determining the appropriate employing unit of the plaintiff
alleging employment discrimination, courts look to the level of
the supervisor or supervisors who are primarily responsible for
the employment decision regarding the plaintiff and other
similarly-situated employees.[fn23] The rationale is that the
motive and intent of the supervisors who made the employment
decisions relating to the plaintiff and other employees is
relevant to determining whether the employment decision was
discriminatory.

In this case, the Court must determine what corporate division
within Defendant, its Global Markets Group or a smaller sub-unit,
its Business Support Services unit, constitutes Plaintiff's work
unit for purposes of defining the geographic scope limitation on
her discovery requests. In making this determination, the Court
will focus on who were the key supervisors responsible for the
allegedly discriminatory employment decision.

The Court finds that the decisions to fill Plaintiff's ISM
director position with another younger, male employee and demote
her to a lower-grade managerial position were made by Plaintiff's
supervisors in Defendant's Business Support Services unit. The

content of e-mails dated September 16, 2002 and September 26,
2002, sent from Mike Reilly, Plaintiff's immediate supervisor, to
Tim McKinley, vice president of Business Support Services,
support that they were the key decision makers. Because these key
decision makers were employed within Defendant's Business Support
Services unit, that unit would be the appropriate employing unit
or work unit for limiting the geographic scope of Plaintiff's
discovery requests.
**Page 9**

  Furthermore, Defendant's September 30, 2002 internal Employee
News Bulletin,**[fn24]** which announced its organizational
changes, including the new director positions of Plaintiff and
the employee who assumed her former ISM position, is entitled "An
Important Message for Sprint *Business Support Services
Associates*" and the subject line reflects "Organizational
changes in Sprint *Business Support Services*."**[fn25]** In
addition, throughout the document, several references are made to
Sprint Business Support Services. This internal usage of the
Business Support Services organization name rather than Global
Markets Group supports Defendant's position that Plaintiff's
"employing unit or work unit" is the Business Support Services
unit. In addition, there is no evidence that individuals at
Defendant's Global Markets Group level made the decisions to fill
Plaintiff's Senior Director position with a younger, male
employee and to demote her to a lower-grade level managerial
position.

  Plaintiff asserts that the Court's decision in *Doebele,*
limiting similar discovery requests to Kansas employees in
Defendant's PCS business unit, supports her position that the
discovery requests should only be limited to Defendant's larger
Global Markets Group. She points out that in *Doebele* the
plaintiff was employed as a financial analyst in Defendant's
Table's Department, which was a department organized with
Defendant's larger PCS business unit. In that case, the Court
limited the scope of the plaintiff's discovery requests to Kansas
employees in the defendant's PCS business unit.**[fn26]**

  Plaintiff urges the Court to limit the scope of her discovery
request to Defendant's applicable PCS business unit counterpart
in this case, its Global Markets Group. She asserts that
Defendant has admitted
**Page 10**
that its four "business units" are Global Markets Group ("GMG"),
Personal Communications Systems ("PCS"), Local Telecommunications
Division ("LTD"), and Corporate.

  Notably, in *Doebele* the Court limited discovery to the *Kansas
employees* of Defendant's PCS's unit.**[fn27]** Thus, contrary to
Plaintiff's suggestion that the scope of discovery should be
limited to Defendant's applicable "business unit," the Court did
not define the geographic scope in *Doebele* as defendant's PCS
business unit, but rather the *Kansas employees* of defendant's
PCS business unit.**[fn28]** The *Doebele* geographic limitation
was much more restrictive than the scope proposed by Plaintiff
here. In this case, however, the parties agree that a geographic
restriction to Kansas only, as ordered by the Court in *Doebele,*
would probably be too restrictive because Defendant's Business

Support Services unit spans several different geographic locations. The Court therefore declines to apply the same geographic discovery limitation as utilized in *Doebele.*

Absent a showing by Plaintiff of a more particularized need for, and the likely relevance of, expanding discovery to Defendant's Global Markets Group, the appropriate employing unit for limiting the geographic scope of Plaintiff's Opening Interrogatory No. 3 and Request No. 17 is Defendant's Business Support Services. Because Plaintiff has failed to present any evidence to justify discovery beyond Defendant's Business Support Services unit, Plaintiff's Opening Interrogatory No. 3 and Request No. 17 should therefore be limited in geographic scope to Defendant's Business Support Services unit.

*3. Overly broad objection — time period*
**Page 11**

Defendant also contends that the time frame of the discovery requests is too broad. It argues that Plaintiff seems to have arbitrarily selected January 2000 as the relevant time period and that a claim filed four years ago is not relevant to this action. Defendant submits that the temporal scope should be limited to the period of time equaling two years prior to the alleged discriminatory behavior through the present.

With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period.**[fn29]** Thus, the task of the trial court is to balance the clear relevance of the information against the burden on the defendant.**[fn30]**

Plaintiff's Opening Interrogatory 3 requests information on other age or sex discrimination investigations of Defendant by any local, state or federal agencies for the time period March 2000 to the present date. Plaintiff's First Request for Production No. 17 seeks documents relating to other charges of age or sex discrimination for the time period January 2000 to the present.

In her Amended Complaint, Plaintiff alleges that in September 2002 one of her supervisors questioned her whether she would consider moving because her position was going to be relocated to
**Page 12**
Reston, Virginia. Later that month, Plaintiff learned that her position would move to Virginia and be filled by a younger, male employee. She thereafter applied for and attempted to secure another permanent Director's position within Defendant without success. On or about March 25, 2003, Plaintiff filed charges of sex discrimination and age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On April 1, 2003, Defendant eliminated Plaintiff's position as Senior Director and demoted her to the position of Group Manager.

Based upon Plaintiff's claims, Defendant's allegedly discriminatory conduct occurred after September 2002, when she

was questioned whether she would consider relocating with her position. Her discovery requests inquiring about other investigations and charges of discrimination for the time periods starting March 2000 and January 2000, respectively, thus seek discovery for approximately two and a half years prior to the alleged discriminatory conduct.

Upon weighing the relevancy of the information sought against the burden imposed upon Defendant under the particular facts presented here, the Court is persuaded that the temporal scope of Plaintiff's discovery requests is not overly broad. The Court determines that discovery seeking information starting two and a half years prior to the discriminatory conduct is a reasonable period of time and in line with the majority of cases addressing this discovery issue. The Court therefore declines to limit the temporal scope of Plaintiff's Opening Interrogatory 3 and First Request No. 17 as requested by Defendant.

### 4. Attorney-client privilege/work product objection

Defendant also objected to Plaintiff's Opening Interrogatory No. 3 on the grounds that is seeks information which is shielded from discovery under the attorney client privilege and/or the attorney work product doctrine. The Court notes that the parties do not appear to address this objection in their briefing
**Page 13**
to the Motion to Compel. As the parties have not addressed this objection, the Court is unable to ascertain the status of this objection and will therefore address this objection at the final pretrial conference on **June 8, 2004.** The parties should be prepared to address this objection or advise the Court that is has been informally resolved.

### B. First Request for Production Nos. 9 and 10

Plaintiff's First Request for Production of Documents No. 9 seeks "[t]he complete personnel files, (and other files), of all management and/or supervisory employees that supervised plaintiff from January, 2000 to the present date, including, but not limited to Mike Reilly, Tim McKinley, and Jo Blagovich, including copies of all evaluations of their work performance, and alpha ratings, while in the employ of defendant." Request No. 10 seeks documents "which relate to the performance, alpha ratings, compensation or duties of the individuals named in request No. 9 above, but are not kept in their personnel files, such as kept in the supervisor's files and/or files maintained by some other entity."

The Court notes that Plaintiff's motion is unclear whether she seeks to compel production of personnel files of management and/or supervisory employees other than Plaintiff's three named supervisors — Mike Reilly, Tim McKinley, and Jo Blagovich. Because Plaintiff does not discuss any production of personnel files for any management and/or supervisory employees other than Reilly, McKinley, and Blagovich, the Court will limit the motion to the personnel files of these three supervisors.

Defendant states in its Opposition to Plaintiff's Motion to Compel that it has informally agreed to produce, and has

produced, the personnel files of Mike Reilly, Tim McKinley, and Jo Blagovich, Plaintiff's supervisors at the time of the alleged discrimination. In her reply brief, Plaintiff advises the Court that
**Page 14**
although Defendant has agreed to produce updated information in the personnel files of three of Plaintiff's supervisors, it has not yet done so. To the extent that Defendant has not already produced this information, it shall produce updated information in the personnel files of Mike Reilly, Tim McKinley, and Jo Blagovich **within ten (10) days of the date of this Order.**

### III. Sanctions

As the Court is unable to rule on the entirety of Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents, the Court will defer ruling on sanctions until after the final pretrial conference.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents (doc. 36) is granted in part and denied in part. **Within ten (10) days of the date of this Order,** Defendant shall serve its supplemental answer to Plaintiff's Opening Interrogatory No. 3 and produce documents responsive to Plaintiff's First Request for Production of Documents Nos. 17. Any such supplemental answer or document production shall be limited in geographic scope to Defendant's Business Support Services unit. Defendant does not have to answer Interrogatory No. 3 with information that it claims is shielded from discovery under the attorney-client privileged and/or work product doctrine.

IT IS FURTHER ORDERED that Defendant's request to limit the temporal scope of Plaintiff's Opening Interrogatory No. 3 and First Request for Production of Documents Nos. 17 to two years prior to the alleged discriminatory conduct is denied.

IT IS FURTHER ORDERED that the Court will take up Defendant's privilege objection to Plaintiff's Opening Interrogatory No. 3 at the final pretrial conference on **June 8, 2004.** The parties should be prepared to address this objection or advise the Court that is has been informally resolved.
**Page 15**

IT IS FURTHER ORDERED that to the extent that Defendant has not already produced updated information in the personnel files of three of Plaintiff's supervisors, it shall produce this information **within ten (10) days of the date of this Order.**

IT IS FURTHER ORDERED that the Court will defer ruling on sanctions until after the final pretrial conference.

**IT IS SO ORDERED.**

[fn1] **42 U.S.C. § 2000e** *et seq.*

[fn2] **29 U.S.C. § 621** *et seq.*

[fn3] *See* Certificate of Service of Pl.'s First Interrogs. &

First Req. for Produc. of Docs. to Def. (doc. 22).

[fn4] *See* Certificate of Service for Def.'s Answers and
Objections to Pl.'s Opening Interrogs. (doc. 30) & First Req. for
Produc. of Docs. (doc. 31).

[fn5] *See* Certificate of Service for Def.'s First Supplemental
Answers & Objections to Pl.'s Opening Interrogs. (doc. 35).

[fn6] Fed.R.Civ.P. **26**(b)(1).

[fn7] *Sheldon v. Vermonty,* 204 F.R.D. 679, 689-90 (D. Kan.
2001) (citations omitted).

[fn8] *Id.*

[fn9] *Gen. Elec. Capital Corp. v. Lear Corp.,* 215 F.R.D. 637,
640 (D. Kan. 2003) (citing *Scott v. Leavenworth Unified Sch.
Dist. No. 453,* 190 F.R.D. 583, 585 (D. Kan. 1999)).

[fn10] *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 442, 445
(D. Kan. 2000).

[fn11] *Epling v. UCB Films, Inc.,* No. 98-4226-RDR, 98-4227-RDR,
00-4062-RDR, 2001 WL 584355, at *4 (D. Kan. Apr. 2, 2001).

[fn12] *Gomez v. Martin Marietta Corp.,* **50 F.3d 1511**, **1520**
(10th Cir. 1995) (citing *Rich v. Martin Marietta Corp.,*
**522 F.2d 333**, **343-44** (10th Cir. 1975)).

[fn13] *Id.* (citing *Scales v. J.C. Bradford & Co.,*
**925 F.2d 901**, **906** (6th Cir. 1991)).

[fn14] *Id.*

[fn15] *EEOC v. Kansas City S. Ry.,* No. 99-2512-GTV, 2000 WL
33675756, at *4 (D. Kan. Oct. 2, 2000) (citing *Johnson v. W.H.
Stewart Co.,* 75 F.R.D. 541, 543 (W.D. Okla. 1976)).

[fn16] *Spulak v. K Mart Corp.,* **894 F.2d 1150**, **1156** (10th Cir.
1990).

[fn17] No. 00-2053-KHV, 2001 WL 1718259, at *8 (D. Kan. June 5,
2001).

[fn18] *See, e.g., Mackey v. IBP, Inc.,* 167 F.R.D. 186, 195 (D.
Kan. 1996) (limiting scope of discovery to defendant's Emporia
plant that employed plaintiff); *Gheesling v. Chater,*
162 F.R.D. 649, 650 (D. Kan. 1995) (limiting scope to plaintiff's employing
unit); *Doebele,* 2001 WL 1718259, at *8 (limiting scope of
discovery to Kansas employees of defendant's PCS unit); *EEOC v.
Kansas City S. Ry.,* 2000 WL 33675756, at *4-5 (limiting scope of
discovery to Gulf region).

[fn19] *Mackey,* 167 F.R.D. at 195 (quoting *Heward v. W. Elec.
Co.,* No. 83-2293, 1984 WL 15666, at *6 (10th Cir. July 3,
1984)).

[fn20] *See Joslin Dry Goods Co. v. EEOC,* **483 F.2d 178**, **184**

(10th Cir. 1973).

[fn21] *See Heward,* 1984 WL 15666, at *6.

[fn22] *Haselhorst v. Wal-Mart Stores, Inc.,* 163 F.R.D. 10, 11
(D. Kan. 1995) (citing *Earley v. Champion Int'l Corp.,*
**907 F.2d 1077, 1084-85** (11th Cir. 1990); *James v. Newspaper Agency
Corp.,* **591 F.2d 579,** **582** (10th Cir. 1979); *Serina v.
Albertson's, Inc.,* 128 F.R.D. 290, 291-92 (M.D. Fla. 1989);
*Prouty v. Nat'l R.R. Passenger,* 99 F.R.D. 545, 547 (D.D.C.
1983)).

[fn23] *EEOC v. Kansas City S. Ry.,* 2000 WL 33675756, at *4-5;
*Bryant v. Farmers Ins. Co.,* No. 01-02390-CM, 2002 WL 1796045,
at *3 (D. Kan. July 31, 2000).

[fn24] Ex. D to Def. Sprint's Opposition to Pl.'s Mot. to Compel
(doc. 45).

[fn25] *Id.* (emphasis added).

[fn26] *Doebele,* 2001 WL 1718259, at *8.

[fn27] *Id.* (emphasis added).

[fn28] *Id.*

[fn29] *See, e.g., James,* 591 F.2d at 582 (four years prior to
liability period reasonable); *Gen. Ins. Co. v. EEOC,*
**491 F.2d 133** (9th Cir. 1974) (eight years prior to liability period held
excessive); *EEOC v. Kansas City S. Ry.,* 195 F.R.D. 678 (D. Kan.
2000) (allowing discovery four years prior and one year after
alleged discriminatory conduct); *Raddatz v. Standard Register
Co.,* 177 F.R.D. 446, 448 (D. Minn. 1997) (allowing discovery
into the period two years after termination); *Lyoch v.
Anheuser-Busch Companies, Inc.,* 164 F.R.D. 62, 67 (E.D. Mo.
1995) (four years prior to liability period reasonable); *Hicks
v. Arthur,* 159 F.R.D. 468, 471 (E.D. Pa. 1995) (allowing
discovery to extend to the period two years after the tenure of
the plaintiffs); *Stevenson v. Gen. Elec. Co.,* No. C-1-77-122,
1978 WL 150, at *1 (S.D. Ohio Oct. 4, 1978) (noting emergence of
a "five-year rule").

[fn30] *Clarke v. Mellon Bank,* No. 92-CV-4823, 1993 WL 170950,
at *2 (E.D. Pa. May 11, 1993).

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT D

# Loislaw Federal District Court Opinions

McCRANE v. MARCONI MEDICAL SYS., INC., (E.D.Pa. 2002)

DIANE McCRANE Plaintiff, v. MARCONI MEDICAL SYSTEMS, INC.,

Defendant.

Civil Action No. 01-1518.

United States District Court, E.D. Pennsylvania

March 28, 2002.

## MEMORANDUM AND ORDER

**J.M. KELLY, J.**

Presently before the Court are the following: (1) Plaintiff's Motion to Compel Defendants to Answer Certain Interrogatories and Requests for Production of Documents without Objection; (2) Defendant's Motion to Preclude the Admission of Evidence Regarding Damages Claimed in Plaintiff's Pretrial memorandum; and (3) Plaintiff's Motion in Limine to Preclude Certain Witnesses from Testifying at Trial. Plaintiff, Diane McCrane, asserts the following claims in her Complaint against Defendant, Marconi Medical Systems, Inc.: (1) violation of the Family And Medical Leave Act ("FMLA"), **29 U.S.C. § 2601** et seq., (1994); (2) violation of the Americans With Disabilities Act ("ADA"), **42 U.S.C. § 12101** et seq.; (3) wrongful discharge under Pennsylvania law; (4) violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), **29 U.S.C. § 1161** et seq.; and Employee Retirement Income Security Act ("ERISA"), **29 U.S.C. § 1132** et seq. After considering the motions, relevant pleadings and evidence, and hearing oral argument made by counsel on March 25, 2002, the Court makes the following ruling.

## BACKGROUND

Plaintiff worked for Defendant**[fn1]** as a customer service employee from March 1997 until September 17, 1999 when she was terminated. On September 9, 1999, while reaching for certain files, Plaintiff stood on a stool in an awkward manner, which caused her knee to give way, causing immediate pain. That morning, Plaintiff went to her doctor, Dr. Edward J. Ciecko, who recommended that Plaintiff remain out of work.

After the date of the injury, it is undisputed that Plaintiff was absent from work until September 17, 1999 when Defendant fired her. The parties, however, differ greatly on what happened during the period between September 9th and September 17th. According to Plaintiff, she was following her doctor's advice to stay home and was in constant touch with her supervisor, Georgeanne Paczkoski ("Paczkoski"). Moreover, Plaintiff claims she requested worker's compensation forms from Paczkoski during their phone conversations but she never received the forms from Defendant. Paczkoski, on the other hand, claims that Plaintiff only called in once during the time period after her injury and termination, and did not inform her as to the exact nature of her injury. Moreover, she denies Plaintiff asked for worker's compensation forms.

It is also undisputed that the termination letter sent to Plaintiff by Defendant cited "job abandonment" as the reason for Plaintiff's termination. Plaintiff, however, claims that Defendant Corporation fired her because she attempted to exercise her lawful rights to pursue worker's compensation benefits. In response to the lawsuit, Defendant claims Plaintiff was fired because she failed to report to work, and failed to provide a physician statement indicating that she was unable to perform her job duties, for six consecutive days, as she had been instructed to do. Defendant also cites a history of poor attendance for firing Plaintiff.

On September 27, 1999, Plaintiff filed for worker's compensation benefits. On November 12, 1999, it was agreed that Plaintiff was entitled to worker's compensation benefits from September 9, 1999, the date of her injury, to October, 4 1999,**[fn2]** the date Dr. Ciecko released Plaintiff to return to work. Plaintiff's knee injury, however, worsened and Plaintiff underwent knee surgery on January 20, 2000. Plaintiff received worker's compensation benefits from January 20, 2000 to April 12, 2000. Due to complications, Plaintiff subsequently underwent a second surgery on August 19, 2000. Plaintiff has been receiving worker's compensation since then. In sum, it is undisputed that Plaintiff received worker's compensation benefits since the date of her injury with the exception of 32 weeks during the relevant period. During those 32 weeks, Plaintiff also received some unemployment compensation benefits. Plaintiff has not been able to find a job since her termination from Defendant Corporation.

On March 29, 2001, Plaintiff filed this lawsuit. Discovery in this case was to conclude October 15, 2001 but by Stipulation and Order, it was extended 60 days until December 15, 2001. The case was placed in the trial pool on February 4, 2002. On March 25, 2002, a hearing was held to hear argument on the various Motions before the Court. Defendant's Motion For Partial Summary Judgment is still pending before this Court. Upon hearing oral argument, the Court determined that the parties still have not resolved several discovery disputes, mainly the failure of both parties to fully disclose and answer the other party's request for interrogatories and production of documents. The Court will address each motion in turn.

## I. MOTION TO COMPEL PRODUCTION OF DOCUMENTS

In Plaintiff's Second Request for Production of Documents, she requested that Defendant produce the following:

All documents referring to the worker's compensation claim which plaintiff Diane McCrane filed against defendant, including all correspondence between defendant and defendant's worker's compensation insurance carrier which reference Diane McCrane and/or her worker's compensation claim.

Defendant answered by stating:

Defendant objects to this request as it requests documents referring to the plaintiff's worker's compensation claim which was filed after plaintiff's termination and which are therefore irrelevant. Defendant also objects to this request as seeking information protected by the attorney-client privilege

and disclosure of trial preparation materials beyond
the scope of permissible discovery under
F.R.C.P.(26)(b)(3).

In Plaintiff's Third Request for Production of Documents, she
requested:

1. All attendance records of the seven employees
assigned to the Order Express operation of the Trevose
office from March, 1997 to October 1, 2000.

2. All documents referring to any attendance issues
pertaining to the seven employees assigned to the
Order Express operation of the Trevose office from
March, 1997 to October 1, 2000.

Defendant responded to both requests as follows:

Defendant objects to this request as it seeks
documentation that is irrelevant and may contain
sensitive and/or confidential material which would
implicate privacy interests of individuals not parties
to this lawsuit. Defendant also objects to this
request as overly broad and unduly burdensome.
Documents referring to the attendance of employees
could embrace a broad spectrum of materials in many
different forms. In addition, the OrderExpress
operation which employed plaintiff is no longer in
existence. Therefore a search of the sort requested
would require a review of voluminous number of
documents housed in the state of Ohio with attendant
unreasonable expenditures of time and expense.

Plaintiff rejected Defendant's offer to produce time sheets in
lieu of the attendance records.

### DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) provides:

Parties may obtain discovery regarding any matter,
not privileged, which is relevant to the subject
matter involved in the pending action . . . . It is
not grounds for objection that the information sought
will be inadmissible at the trial if the information
sought appears reasonably calculated to lead to the
discovery of admissible evidence.

Relevancy under Rule 26(b) is broadly construed. See Oppenheimer Fund,
Inc. v. Sanders, **437 U.S. 340**, 351 (1978). The scope of discovery,
however, is not without its limits and is "committed to the sound
discretion of the trial court." Miller v. Hygrade Food Products Corp.,
**89 F. Supp.2d 643**, 657 (E.D.Pa. 2000) (citations omitted). Moreover, the
party seeking discovery has the burden of showing relevancy. Id.

### 1. Attendance Records

The Court finds that documents relating to other employee's attendance
records are relevant to the Plaintiff's asserted claims and to

Defendant's asserted defenses. Although Defendant offered time sheets, in lieu of the attendance records, they do not satisfy the Plaintiff's discovery request as time sheets do not indicate the type of disciplinary actions taken against the other employees similarly situated as the Plaintiff. The Court, however, finds the scope of the Plaintiff's discovery request as to the attendance records overly broad. Therefore, the Court will limit the discovery of documents relating to the attendance records of the seven other employees, to documents dating back to 18 months prior to Plaintiff's discharge. This should suffice to provide Plaintiff with any relevant evidence she seeks and make the production of document less onerous for the Defendant.

Accordingly, the Defendant is ordered, within twenty (20) days of this Order, to produce the requested attendance records of the seven other similarly situated employees, provided the records are available. Considering the records are now located in some warehouse in Cleveland, Ohio, Defendant is directed to make a search of those records using reasonable means and effort. In addition, Defendant is directed to produce the previously offered time sheets, since they may act to supplement the attendance records where none is available or missing. Furthermore, Defendant, may, in the interest of protecting any confidential or privacy concerns of third party individuals, redact social security numbers and any other information Defendant deems confidential. Where disputes arise, the Court will view *in camera* the contested portions of the documents.

### 2. Plaintiff's Worker's Compensation Claim Documents

Defendant objects to Plaintiff's request for documents related to the Plaintiff's worker's compensation claim based on relevancy, attorney-client privilege and redundancy. Documents relating to Plaintiff's worker's compensation claims are clearly relevant to the Plaintiff's claims. At this time, the Court need not discuss attorney-client privilege or work-product privilege because the Court finds that the Defendant has already satisfied the Plaintiff's request for production.

Plaintiff is already in possession of the requested documents. Defendant subpoenaed the relevant records from AIG, Defendant's worker's compensation carrier and the Plaintiff's own worker's compensation attorney. These materials were handed over to the Plaintiff before this Motion was filed. Plaintiff, not satisfied with these documents, further sought copies of the same documents which are in Defendant's files. The production of these copies, however, would be wasteful and redundant. Defendant has represented to this Court that all non-privileged responsive documents have been produced to the Plaintiff. Plaintiff has no basis for insisting on copies of exact same documents, other than hopeful conjecture that the copies in Defendant's files may contain some other non-privileged information that supports Plaintiff's legal theory. As such, Plaintiff's request to compel Defendant to produce copies of documents related to Plaintiff's worker's compensation claim is denied.

### II. EVIDENCE REGARDING DAMAGES

The second motion before the Court relates to Plaintiff's claimed damages in her Pretrial Memorandum, listed as: (1) back-pay; (2) compensatory damages; (3) liquidated damages under the FMLA; (4) punitive damages under the wrongful termination claim; (5) attorney's fees, expert fees and costs under various statutes; and (6) COBRA damages. Defendant

Case 3:04-cv-30152-MAP Document 16-2 Filed 08/03/2005 Page 34 of 37

seeks to have the Court preclude evidence of the claimed damages on the following basis: (1) the Plaintiff failed to allege the damages with specificity; (2) the claimed damages are not cognizable under the Plaintiff's claim; (3) the claimed damages were not pleaded in Plaintiff's Amended Complaint; and (4) no evidence has been proffered in support of them. Although this case has already been placed in the trial pool, it is premature to discuss admissibility at this time because the parties are clearly still in the midst of several discovery disputes. As such, the Court will treat this motion as a discovery motion to compel Plaintiff to answer certain interrogatories and produce documents related to Plaintiff's claimed damages and reserve the issue of admissibility at trial for another time.

## DISCUSSION

This Court's Pretrial and Trial Procedures require that Plaintiff include in its Pretrial Memoranda an "itemized statement of damages or other relief sought." Furthermore, Local Civil Rule 16.1(b)(3)(A) specifies that parties seeking damages "shall provide a detailed description of each item and state the amount of damages claimed." The Defendant also specifically requested that Plaintiff provide the Defendant with Plaintiff's claimed damages, the method of computation, and any supporting documentation of the claimed damages. The statement of claimed damages provided by Plaintiff in her Pretrial Memorandum is not specific enough to satisfy this Court's standing order. It also appears from the pleadings and argument at hearing that Plaintiff has not satisfied Defendant's discovery requests.

As such, Plaintiff shall, within ten (10) days of this Order, provide a more detailed, specific list of itemized damages, show the method of computation and list or provide the Defendant with specific documentation, if any, to support the claimed damages as requested by the Defendant's discovery requests. For each item, the Court makes the following notation.

**1. Back-pay:** Both parties agree Plaintiff has been receiving worker's compensation benefits with the exception of 32 weeks of the relevant period. There is also evidence that Plaintiff received unemployment benefits. As agreed by the parties, these amounts will most likely reduce the total amount of back-pay Plaintiff will be claiming. Therefore, the Plaintiff shall provide a summary of the relevant time periods with a breakdown of the amounts claimed for each relevant time period, and show the exact method of computation for the amount of back-pay to which Plaintiff is claiming she is entitled. Plaintiff shall also provide any supporting documentation she has not yet provided to Defendant.

**2. Compensatory Damages:** Plaintiff shall set forth elements of the claimed compensatory damages and show how Plaintiff satisfies each element. Apart from the monetary amount related to pain and suffering, Plaintiff shall provide the method of computation and enumerate in detail the amount and basis for each claimed compensatory damage. Plaintiff shall also provide any supporting documentation she has not yet provided to Defendant.

**3. Liquidated Damages under the FMLA:** Plaintiff shall provide the method of computation and enumerate in detail the amount and basis for the claimed statutory fees.

**4. Punitive damages:** The issue of punitive damages will be addressed in

this Court's resolution of Defendant's Partial Summary Judgment Motion and Leave to Amend Defendant's Partial Summary Judgment Motion, which asks this Court to dismiss Plaintiff's claim for punitive damages.

**5. Attorney's fees, expert fees and costs:** The issue of attorney's fees is not a matter for the jury but within the province of the court. It is, therefore, reserved until the final resolution of the case. On the other hand, Defendant is entitled to information concerning the costs of any expert fees. Plaintiff is ordered to provide the Defendant with information, including any documents, on the past and future costs of any experts it has retained and may possibly use at trial.

**6. $4,800 under COBRA for inferior insurance coverage:** Plaintiff shall produce all documents, including receipts and evidence of payment, related to the alleged inferior insurance coverage Plaintiff was forced to pay for as a result of Defendant's failure to comply with COBRA. Furthermore, the Plaintiff is directed to provide the method of computation and enumerate specifically the amount and basis for the computation of the claimed amounts.

**7. $54,800 of statutory COBRA damages:** Plaintiff shall provide a breakdown of relevant time periods and enumerate specifically the method of computation and show the basis for the computation of the claimed amounts.

### III. PREVIOUSLY UNIDENTIFIED TRIAL WITNESSES

On January 7, 2002, after discovery closed and less than one month before this case was to be placed in the trial pool, Defendant listed eight new trial witnesses in its Pretrial Memorandum. The Defendant seeks to preclude them from testifying at trial. The eight witnesses are Plaintiff's former co-workers who will testify regarding the Plaintiff's "job performance, attendance record, her alleged accident, the time frame following her accident and termination." Defendant did not identify these individuals either in its Self Executing Disclosures or in its response to Plaintiff's Interrogatories.

### DISCUSSION

Federal Rule of Civil Procedure 26(e) imposes on litigants a duty to supplement discovery responses. Defendant's argument that Plaintiff had notice merely because the names of these individuals were mentioned by Plaintiff in her deposition is without merit. Defendant should have given notice earlier. As such, this Motion will be treated as a Motion to Compel Defendant to Answer Certain Interrogatories, rather than a motion to preclude witnesses from testifying at trial.

Moreover, this Court's standing Order states that the Pretrial Memorandum is to contain "A list of witnesses to be presented with a brief statement of the nature of their testimony. Witnesses not listed may not be called in the party's case in chief." Defendant's Pretrial Memorandum fails to articulate the specific nature of the proposed witnesses' testimony. Defendant's description of the proposed witnesses' testimony basically encompasses the whole case. Therefore, the information contained in the Plaintiff's Pretrial Memorandum does not satisfy the Plaintiff's obligations.

Therefore, the Court orders Defendant to cure its failure to supplement the Plaintiff's interrogatories and the defect in its Pretrial Memorandum

by articulating the exact nature of the proposed witness' testimony and providing the names, addresses, and phone numbers of each proposed witness to the Plaintiff within ten (10) days of this Order. Plaintiff shall have thirty (30) days in which to depose any of those eight witnesses should it choose to do so after Defendant's submission as directed by this Court.

### ORDER

**AND NOW,** this day of March, 2002, in consideration of Plaintiff's Motion to Compel Defendant to Answer Certain interrogatories and Requests for Production of Documents without Objection (Doc. No. 7); Defendant's Motion to Preclude the Admission of Evidence Regarding Damages Claimed in Plaintiff's Pretrial memorandum (Doc. 17); and Plaintiff's Motion In Limine To Preclude Certain Witnesses From Testifying at Trial (Doc. 18), the following is **ORDERED:**1. Plaintiff's Motion to Compel Defendant to Answer

Certain interrogatories and Requests for Production of Documents without Objection (Doc. No. 7) is **GRANTED** in part and **DENIED** in part.

A. Defendant shall, within twenty (20) days of this Order, produce attendance records and time sheets of seven other employees at the Trevose office dating back 18 months from Plaintiff's termination, September 17, 1999.

B. Plaintiff's motion to compel documents related to Plaintiff's worker's compensation claim without objection is denied.

2. Defendant's Motion to Preclude the Admission of Evidence Regarding Damages Claimed in Plaintiff's Pretrial Memorandum (Doc. 17), which the Court deems as a Motion to Compel Evidence Regarding Damages Claimed in Plaintiff's Pretrial Memorandum, is **GRANTED** in part and **DENIED** in part.

A. Plaintiff shall, within ten (10) days of this Order, comply with the instructions in Part II, pages 10-12, of this Memorandum and Order.

B. Defendant's request for evidence relating to Plaintiff's attorney's fees incurred in this case is denied.

3. Plaintiff's Motion In Limine To Preclude Certain Witnesses From Testifying at Trial (Doc. 18), which the Court deems as a Motion to Compel Defendant to Answer Certain Interrogatories, is **GRANTED**.

A. Defendant is **ORDERED** to provide the Plaintiff with a brief but specific description of the nature of the intended testimony of each of the eight witnesses identified in its pre-trial memorandum within 10 days of the date of this Order.

B. Plaintiff shall have thirty (30) days in which to depose any of those eight witnesses should it choose to do so after Defendant's submission as directed by the Court in subparagraph 3A of this Order.

[fn1] At the time Plaintiff worked for Defendant, it was known as Picker International, Inc. Plaintiff worked at the OrderExpress operation, located in Trevose, Pennsylvania. Defendant's headquarters are located in Cleveland Ohio. Subsequent to the filing of this lawsuit, Defendant's name was changed to Philips Medical Systems Inc. The caption of this case

does not reflect the name change. The parties may file a stipulation if they choose to change the caption of this case to reflect the latest name change.

[fn2] On October 1, 2000, the operation at the Trevose office which had employed Plaintiff was discontinued. As a result, although Dr. Ciecko released the Plaintiff to return to work on October 4, 1999, Plaintiff's former position as a customer service employee no longer exists at the Trevose office. All other employees at the Trevose office, however, were given the choice of relocating to Cleveland, Ohio.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved