UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUSAN MOUNT,                    :
         Plaintiff,       :
   v.                          :          Civil Action No. : 3:04-CV-30152 MAP
                     :
ZALE DELAWARE, INC.,   :
         Defendant.     :

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Zale Delaware, Inc. is entitled to summary judgment on all counts of plaintiff's

Complaint because, as demonstrated herein, her claims are untenable when the controlling legal

principles are applied to the undisputed material facts.[1]  As demonstrated herein, plaintiff's ADA

and Chapter 151B claims fail because she was not disabled within the meaning of those statutes,

and even presuming she was, Zale did not discriminate against her because of a disability or

retaliate against her for engaging in protected conduct.  Her FMLA claims fail because she did

not have a "serious health condition" entitling her to the protections of the Act, and even

presuming she did, Zale neither interfered with her FMLA rights nor retaliated against her for

exercising same.  Rather, the evidence of record demonstrates that plaintiff lost her job when,

upon the expiration of her FMLA and personal leave, she admittedly refused to work the 48 hour

workweeks expected of store managers and failed to report to work, thereby abandoning her job.

For these reasons, Zale is entitled to judgment as a matter of law on all plaintiff's claims.

## LEGAL STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact, and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A "genuine issue"

is one "supported by such evidence that a reasonable jury, drawing favorable inferences, could

---

[1] These facts are set forth in Defendant's Statement of Undisputed Material Facts filed herewith and will be incorporated in this memorandum where pertinent to discussion of the issues.

resolve it in favor of the nonmoving party." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999). "Material" means that a fact has the potential of affecting the outcome of the case. *See Kearney v. Town of Wareham*, 316 F.3d 18, 22 (1st Cir. 2002). As to issues on which the nonmoving party bears the burden of proof, "he must present definite, competent evidence to rebut the motion." *Id.* (quotation and citation omitted).

### ARGUMENT

**A.  ZALE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S ADA AND CHAPTER 151B DISCRIMINATION CLAIMS BECAUSE SHE WAS NOT DISABLED AND ZALE DID NOT TAKE ADVERSE ACTION AGAINST HER "BECAUSE OF" A DISABILITY.**

Summary judgment should be granted to Zale on Counts I and III of plaintiff's Complaint because the record evidence demonstrates that she did not have a "disability" or "handicap" within the meaning of the statutes at the time of the relevant events. In addition, even presuming she was covered by the ADA and/or Chapter151B, plaintiff cannot proffer sufficient record evidence to show that she was subject to adverse employment action "because of" such disability. Plaintiff's failure to accommodate claims also fail because she was not protected by the statutes, and cannot show that she requested or was denied a reasonable accommodation for a known disability by Zale.

Plaintiff appears to premise her claim of disability discrimination upon two discrete theories of liability: (1) disparate treatment and (2) failure to reasonably accommodate her alleged disability - depression. Under either theory, a threshold showing of disability is required. *See Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002). With respect to her disparate treatment claim, plaintiff alleges that Zale discriminated against her because of her alleged impairment by terminating her employment. To establish a prima facie case of discrimination under this theory pursuant to the ADA and its Massachusetts analogue, Chapter 151B, the

plaintiff must show (1) that she suffers from a disability or handicap, as defined by the ADA and Chapter 151B,[2] that (2) she was nevertheless able to perform the essential functions of her job, either with or without reasonable accommodation, and finally that (3) Zale took an adverse employment action against her because of, in whole or in part, her protected disability. *See id*. at 237; *Lessard v. Osram Sylvania, Inc*., 175 F.3d 193, 197 (1st Cir. 1999). As to her reasonable accommodation claim, plaintiff needs to show, in addition to the first two prongs set forth above, that Zale, despite knowing of her alleged disability, did not reasonably accommodate it. *See id*; The plaintiff bears the burden of establishing each of these elements.

Disparate treatment claims under the ADA and Chapter 151B are analyzed pursuant to the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Higgins v. New Balance Athletic Shoe, Inc*., 194 F.3d 252, 264 (1st Cir. 1999). Under this approach, the plaintiff must first establish a prima facie case of discrimination by establishing the elements set forth above. If she is able to do this, the burden shifts to Zale to articulate a legitimate, nondiscriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason. *See McDonnell Douglas*, 411 U.S. at 802. Finally, if Zale offers such a reason, the burden shifts back to the plaintiff, and she must proffer evidence to establish that Zale's nondiscriminatory justification is mere pretext, cloaking discriminatory animus. *See id*. at 804. The ultimate burden of proving unlawful discrimination rests at all times with the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000).

---

[2] Although the two definitions materially differ in some areas, *see, e.g. Dahill v. Police Dep't of Boston,* 434 Mass. 233, 748 N.E.2d 956 (2001) (under Chapter 151B mitigating measures not to be considered in determining whether person is handicapped), these differences are not involved in this case. Thus, this memorandum frames the discussion primarily in terms of the ADA and federal case law, with the understanding that the analysis applies equally to plaintiff's Chapter 151B claims. *See, e.g., Carroll*, 298 F.3d 328 n. 3; *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 20 n. 5 (1st Cir. 2002); *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 816 n. 5 (1997).

1.    **Plaintiff Cannot Establish a Prima Facie Case of Discrimination Because She is Not Disabled or Handicapped Within the Meaning of the Acts.**

It is axiomatic that no disability discrimination claim lies unless the plaintiff can establish that she is disabled or handicapped within the meaning of the governing statutes. As demonstrated herein, plaintiff cannot do so. A three-part analysis is employed to determine whether an individual has a statutory disability.[3] *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). First, the plaintiff must show that she has a condition that constitutes a mental or physical "impairment." *See id.* Second, she must identify "major life activities" that are affected by her impairment. Major life activities are those activities that are of "central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 691 (2002). Third, she must demonstrate that her impairment substantially limits one or more major life activity. *See Bragdon*, 524 U.S. at 631; *Lessard*, 175 F.3d at 197 ("Under the ADA, not all impairments lead to protection. Only those impairments which substantially limit a major life activity do so.") (citation omitted).

a.    **Mental Impairment and Major Life Activities.**

For purposes of the present motion, Zale does not dispute that Mount's depression constitutes a physical or mental impairment within the meaning of the ADA and Chapter 151B. Plaintiff does not specify in her Complaint what major life activities she contends were limited by her depression. Based on her deposition testimony, however, it appears she is alleging that her ability to engage in the activity of working was limited by her condition. Neither the Supreme Court nor the First Circuit has decided whether working constitutes a major life activity under the ADA, but courts have generally assumed that it does, and Zale will assume as much

---

[3] An individual may also be considered disabled under the statutes if she has "a record of" a substantially limiting impairment or is "regarded as having such an impairment." 42 U.S.C. § 12102(2). *Accord* G.L. c. 151B, § 1(17). Plaintiff has not alleged either of these alternate bases. Therefore, Zale addresses only Mount's claim that she had an actual disability.

for purposes of this motion.  Working is a major life activity under Chapter 151B. *See* G.L. c.

151B, § 1(20).  In order to show that she has a disability cognizable under the Acts, the plaintiff

must demonstrate that her depression substantially limited this major life activity. *See Bragdon*,

524 U.S. at 631.  As demonstrated herein, plaintiff cannot meet this burden.

> **b.    Plaintiff Was Not Substantially Limited in Working Because Her Limitation Was Short-Term and She Was Not Restricted in the Ability to Perform a Broad Range of Jobs.**

In order for a physical or mental impairment to be "substantially limiting," the individual

must be:  "(i) Unable to perform a major life activity that the average person in the general

population can perform;  or (ii) Significantly restricted as to the condition, manner, or duration

under which an individual can perform a major life activity as compared to the condition,

manner, or duration under which the average person in the general population can perform that

same major life activity." 29 C.F.R. § 1630.2(j)(1).  Factors to be considered in determining

whether an individual is substantially limited in a major life activity are "(i) The nature and

severity of the impairment, (ii) The duration or expected duration of the impairment, and (iii)

The permanent or long term impact ... of or resulting from the impairment." 29 C.F.R. §

1630.2(j)(2). *See also Wright v. CompUSA, Inc.*, 352 F.3d 472, 476 (1st Cir. 2003).

Under the foregoing framework, "[i]t is insufficient . . . to merely submit evidence of a

medical diagnosis of an impairment." *Toyota Motor*, 534 U.S. at 198, 122 S.Ct. at 691 (2002).

Rather, those seeking ADA protection must offer evidence that "the extent of the limitation

[caused by their impairment] in terms of their own experience . . . is substantial." *Id.*, 534 U.S. at

198, 122 S.Ct. at 691-92 (quotation and citation omitted).  In addition, to be substantially

limiting, "[t]he impairment's impact must . . . be permanent or long-term." *Id.*

i.    **Plaintiff's limitations were of insufficient duration.**

Taking every conceivable inference in plaintiff's favor, at most the evidence shows that she was unable to work for a 10-week period during her FMLA leave and that upon returning from leave, she was limited in her ability to work in excess of 40 hours per week. First, with respect to being unable to work for 10 weeks, courts have consistently held that such short-term impairments on the ability to work do not constitute substantial limitations under the ADA. For example, in *Carroll v. Xerox Corp.*, 294 F.3d 231 (1st Cir. 2002), the First Circuit held that the plaintiff "fail[ed] to produce evidence that his condition was of sufficient duration and severity to substantially limit him in working" where he was unable to work for a three-month period and where no doctor had placed medical restrictions on his ability to work prior to or upon return from leave. *See id.* at 241. The pertinent facts in the present case are virtually identical to *Carroll*. Here, the plaintiff was unable to work for approximately 2 ½ months, and no health care provider had placed medical restrictions on her ability to work prior to or upon return from leave. Defendant's Statement of Undisputed Facts (hereinafter "Facts") ¶ 45. Indeed, in the present case, the plaintiff's inability to work was of less duration that the plaintiff in *Carroll*, where the court held the limitation not to be of sufficient duration or severity under the ADA.

Other courts have similarly held that an individual's inability to work for periods of several months do not render an individual substantially limited in the major life activity of working. *See, e.g., Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316-317 (2d Cir. 1999) (three and one-half month inability to work due to injury); *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 648 (2d Cir. 1998) (inability to work during seven-month recuperation period not substantially limiting); *Brown v. Verizon Directories Sales Corp.*, 2004 WL 1315845 (D. Ore. March 31, 2004) (plaintiff who was unable to work for a period of approximately three months

was not disabled); *Rector v. Sylvania*, 285 F. Supp. 2d 349, 354 (S.D.N.Y. 2003) (temporary

shoulder injury that kept plaintiff out of work for six months after surgery "not sufficient to

qualify as a disability under the ADA"). Accordingly, under *Carroll* and the other cases set forth

above, as a matter of law the plaintiff was not substantially limited in working..

**ii.    An inability to work in excess of 40 hours per week
does not constitute a substantial limitation.**

In the event plaintiff contends she was substantially limited in working because her

condition rendered her unable to work in excess of 40 hours per week, such argument is without

merit. First, there is no medical evidence to support the proposition that plaintiff was unable to

work in excess of 40 hours per week due to her depression. Prior to going out on FMLA leave in

April of 2003, plaintiff regularly worked an average of 40-plus hours per week. Indeed, in the

six months prior to going out on leave, plaintiff averaged approximately 44 hour per week. Facts

¶ 33. And upon the conclusion of her leave, Elston-Ferry, the health care provider who had

certified plaintiff's need for FMLA leave, released her to return to work with no restrictions

whatsoever. Facts ¶ 44. Thus, as of June 27, 2003, plaintiff's condition had been resolved to the

point where there was no medical need for any work limitations.

Even taking as true plaintiff's self-serving and medically contradicted testimony that she

was unable to work in excess of 40 hours per week because of her depression, courts have

consistently held that this type of limitation does not constitute a substantial limitation on

working. For example, in *Tardie v. Rehabilitation Hosp. of Rhode Island*, 168 F.3d 538 (1st Cir.

1999), the plaintiff, Paula Tardie, worked as Director of Human Resources for the defendant. See

id. at 540. One of the listed requirements on the job description for her position was "ABILITY

TO MAINTAIN ASSIGNED WORK HOURS: Has sufficient endurance to perform tasks over

long periods of time." *Id.* (all caps in original). Tardie worked from 50 to 70 hours per week in

7

this position. *See id.* Tardie went on medical leave after experiencing chest pain, shortness of

breath, numbness in her arms and dizziness. Her doctors conducted tests and found results

consistent with a left atrial enlargement. *See id.* Tardie later sought to regain her position with a

proposal that she would gradually increase her working hours to 40 hours per week. She

acknowledged that she could no longer work the extended hours she had been working. The

hospital refused to reinstate Tardie as HR Director because it believed she could not perform the

job while working only 40 hours per week. Tardie sued alleging, *inter alia*, discriminatory

discharge in violation of the ADA. The district court granted the hospital's motion for summary

judgment, holding that Tardie failed to establish that she suffered from a disability or was

perceived as suffering from a disability under the ADA.

On appeal the First Circuit affirmed. Discussing Tardie's "regarded as" claim, the Court

recognized that "Tardie has clearly demonstrated that appellees regarded her as having an

impairment that prevented her from working more than forty hours per week; Tardie specifically

told them as much." *Id.* at 541-42. "The question becomes whether such an impairment is an

impairment that 'substantially limits' one of Tardie's 'major life activities'." *Id.* at 542. The Court

explained that to be substantially limited in the activity of working, one must be

> significantly restricted in the ability to perform either a class of jobs or a broad range of
> jobs in various classes as compared to the average person having comparable training,
> skills and abilities. The inability to perform a single, particular job does not constitute a
> substantial limitation in the major life activity of working.

*Id.* (quoting 29 C.F.R. § 1630.2(j)(3)). The fact that the hospital may have regarded Tardie as

unable to work more than 40 hours per week, and thereby unable to perform her particular job,

did not mean that it regarded her as being substantially limited in the major life activity of

working, the Court explained. "An impairment that disqualifies a person from only a narrow

range of jobs is not considered a substantially limiting one." *Id.* (quotations and citations

omitted). The Court explained that "there are vast employment opportunities available which require only 40-hour work weeks." *Id.* Thus, the Court affirmed the district court's grant of summary judgment on Tardie's ADA claim. *See id.*

Other courts have similarly concluded that the inability to work in excess of 40 hours per week does not substantially limit an individual's major life activity of working. *See, e.g., Cotter v. Ajilon Serv., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) ("[A]n inability to work overtime is not a substantial limitation on the ability to work."); *Kellogg v. Union Pac. R.R. Co.*, 233 F.3d 1083, 1087-88 (8th Cir. 2000) ("An employee is not substantially limited in the major life activity of working by virtue of being limited to a forty-hour work week."); *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960-61 (8th Cir. 2000) (impairment that prohibits an individual from working over forty hours per week is "not substantially limiting within the meaning of the ADA."); *Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511 (D. Md. 2002) ("[C]ourts have uniformly held that an inability to work overtime is not a substantial limitation on the ability to work.").

### iii.    Plaintiff was not unable to perform a class of jobs or broad range of jobs.

In order to be substantially limited in the major life activity of working the plaintiff must demonstrate that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1168 (1st Cir. 2002)*Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(i)). This demonstration generally requires the introduction of evidence on the "accessible geographic area, the numbers and types of jobs in the area foreclosed due to the impairment, and the types of training, skills, and abilities required by the jobs." *Id.* at 1168 (citing 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C)). Thus, if jobs utilizing the employee's skills are available, she is not precluded from a substantial class of jobs. *See Sullivan*

*v. Neiman Marcus Group, Inc.*, 358 F.3d 110, 116 (1st Cir. 2004). Similarly, if a host of

different types of jobs are available, the employee is not precluded from a broad range of jobs.

*See id.* "Finally, [the plaintiff] must also show that he is not just temporarily precluded from

those jobs; he must show that the impact of his impairment is permanent or at least that it is long

term." *Id.* (citing *Toyota Motor*, 534 U.S. at 198).

The record is devoid of evidence that would allow plaintiff to demonstrate that she was

restricted from performing a class of jobs or broad range of jobs for a duration sufficient to

trigger the ADA. First, as demonstrated above, plaintiff's limitations on working due to her

depression were short-term. Thus, she was not precluded from any class of jobs or a broad range

of jobs on the requisite permanent or long term basis. *See Sulliva*n, 358 F.3d at 116. Moreover,

there is nothing in the record evidencing plaintiff's vocational training and abilities, the

geographical area to which she has access, or the number and type of jobs demanding similar

training from which she would also have been disqualified due to her limitations. She did not

retain a vocational or other expert who could competently testify to these matters. *See Lebron-*

*Torres*, 251 F.3d at 241 ("[Plaintiff's] failure to proffer any evidence specifying the kinds of jobs

that her back condition prevented her from performing dooms her ADA claim.").

The First Circuit has recognized that a plaintiff "must make a 'weighty showing' to prove

that his impairment substantially interferes with his ability to work." *Sullivan*, 358 F.3d at 116

(quoting *Bailey*, 306 F.3d at 1168). Plaintiff has failed to make this showing. Application of the

governing legal principles to the undisputed material facts leads to the inescapable conclusion

that plaintiff was not substantially limited in working due to her depression. In sum, because

plaintiff's depression was short-term, non-severe, and did not restrict her from performing a

broad range of jobs, it did not substantially limit her major life activity of working and thus did

10

not constitute a disability or handicap under the ADA and Chapter 151B.

### 2.    Even if the Plaintiff Was Disabled, She Cannot Demonstrate that Zale's Nondiscriminatory Reason For Her Termination is a Pretext For Discrimination.

Presuming plaintiff could establish a prima facie case of disability discrimination, her claims nonetheless fail because she cannot meet her burden at the third stage of the *McDonnell Douglas* framework.  Under such approach, if a plaintiff is able to show a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason. *See McDonnell Douglas*, 411 U.S. at 802.  As the legitimate nondiscriminatory reason for plaintiff's loss of employment, Zale has asserted that plaintiff abandoned her job by failing to return to work after the expiration of her leave.  Once the employer meets its minimal burden of production, at the final stage, the burden shifts back to the plaintiff to proffer evidence to establish that the nondiscriminatory justification is mere pretext, cloaking discriminatory animus. *See id.* at 804.

A plaintiff may establish pretext in a number of ways.  One method is to show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000).  Another method of establishing pretext is to show that the employer's nondiscriminatory reasons were after-the-fact justifications, provided subsequent to the beginning of legal action. *See id.* at 56. "A plaintiff can also establish pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for

the asserted nondiscriminatory reasons." *Id.* (quotations and citations omitted). Plaintiff can satisfy none of these methods.

First, there is no evidence that any of the decisonmakers (Marcil, Wheeler, McGuire) made discriminatory comments. Second, the nondiscriminatory reason asserted by Zale is not an after-the-fact justification. Rather, plaintiff's job abandonment resulting from her refusal to work the requisite store manager's hours is the reason that has been given since day one. Finally, plaintiff cannot show such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Zale's proffered nondiscriminatory reason to support a finding that the Company did not in fact act for the asserted reason. With respect to this third method, plaintiff may argue that the requirement that she work 48 hour workweeks upon returning from leave was implausible or inconsistent with reality. Any such argument is without merit. The record establishes that Deanne Laffan, the person who succeeded plaintiff as store manager of the Lee Zales Outlet, averaged workweeks of approximately 53 hours in the six months after becoming store manager in late July 2003. Facts ¶ 52. For the one-year period after succeeding plaintiff, Laffan averaged approximately 51 hours per week. *Id.* In the face of this evidence, plaintiff cannot demonstrate that the Zale's requirement that she work a 48 hour schedule was pretext.

**B. ZALE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM BECAUSE SHE WAS NOT DISABLED, AND NEITHER REQUESTED NOR WAS DENIED A REASONABLE ACCOMMODATION.**

Plaintiff appears to assert a reasonable accommodation claim premised on her alleged requests that she be provided "some time off from work for further treatment for depression," and that she "keep her same work schedule and hours that she had prior to her medical leave." Complaint at 2, ¶¶ 10-11. Plaintiff alleges in her complaint that Zale denied these requests, thus

violating the ADA's proscription of providing her a reasonable accommodation. The record evidence fails to support any such claim. First, as demonstrated above, plaintiff did not have a disability within the meaning of the Acts and therefore, no duty arose for Zale to provide a reasonable accommodation. Even presuming plaintiff was covered by the statutes as a person with a disability, she never requested time off from work for further treatments and never advised Zale that she needed to work a reduced schedule due to a disability.

To survive summary judgment on a reasonable accommodation claim, a plaintiff must produce enough evidence for a reasonable jury to find that (1) she is disabled within the meaning of the ADA, (2) she was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) despite her employer's knowledge of her disability, the employer did not reasonably accommodate it. *See Estades-Negroni v. Associates Corp. of N. Am.*, 377 F.3d 58, 63 (1st Cir. 2004); *Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir. 2003).

As demonstrated above, plaintiff cannot pass the first hurdle, since she cannot show that her depression substantially limited any major life activity. While she may have had a mental impairment, Zale was not required to accommodate such impairment because it did not substantially limit any of her major life activities. *See, e.g., Felix v. New York City Transit Auth.*, 324 F.3d 102 (2d Cir. 2003) (instructing that "impairments that do not amount to a 'disability' as defined by [the ADA] do not require accommodation under the ADA."). Plaintiff must also demonstrate that the employer knew of her disability and failed to provide a reasonable accommodation therefor. *See* 42 U.S.C. § 12112(b)(5)(A) (requiring covered entities to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."). Plaintiff cannot demonstrate either that Zale knew she

had a disability or that she made a request for an accommodation sufficient to trigger an obligation on the part of Zale to provide an accommodation.

Zale knew only that plaintiff had been diagnosed with depression and that she had been unable to work for 9 to 10 weeks because of the condition. Knowledge that an employee has a condition rendering her unable to work for a short period of time is not the equivalent of knowledge that an employee has a mental impairment that substantially limits one or more major life activities. Plaintiff did not inform Zale of any medically necessary limitations on her ability to work. Indeed, there were none, as Elston-Ferry had not imposed any such restrictions prior to plaintiff's leave, and had released her to work to work "full time/duty" without limitation upon the conclusion of her leave. Facts ¶ 45. Moreover, when discussing her alleged inability to work the standard manager's schedule with Marcil, plaintiff did not reference the need for an accommodation because of a substantially limiting impairment. Facts ¶¶ 35-39. Rather, the crux of her issue with working the 48 hour schedule was her family needs. Facts ¶¶ 35-37. Marcil's testified that in this conversation plaintiff said "something in the manner of that she was still experiencing some of the childcare concerns that she had previous to her leave and, therefore, she would not be able to work certain shifts." Facts ¶ 36. Thus, plaintiff cannot show that Zale had knowledge that she was disabled. *See Estades-Negroni*, 377 F.3d at 64 ("An employer need not provide accommodations where it does not know an employee has a disability."). Significantly, there is no evidence to support the allegation in the Complaint that plaintiff requested of Zale "some time off from work for further treatment for depression."[4] Complaint at 2, ¶ 10. Rather, the evidence is consistent that "family needs" was the reason given for her request.

---

[4] Indeed, it is undisputed that plaintiff received <u>NO</u> treatment for depression during her FMLA leave. Facts¶ __.

Neither can plaintiff show that she made a sufficient request for an accommodation. "[T]he ADA's reasonable accommodation requirement usually does not apply unless triggered by a request...." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) (quotation and citation omitted). "Under the ADA, requests for accommodation must be express and must be linked to a disability." *Estades-Negroni*, 377 F.3d at 64. The employee's request for accommodation must be "sufficiently direct and specific, giving notice that she needs a special accommodation" because of a disability. *Reed*, 244 F.3d at 261. "At the least, the request must explain how the accommodation requested is linked to some disability." *Id.*

To the extent plaintiff made a request for accommodation at all, it was that she be allowed to work no more than 40 hours per week because of her "situation and [ ] family needs." Facts ¶ 37. Even presuming that by mentioning her "situation" plaintiff was alluding to her depression, this was insufficient to place Zale on notice that she was claiming to be "disabled." Plaintiff's purported request also failed to sufficiently link the requested accommodation to her alleged disability. Indeed, the record is devoid of evidence that plaintiff so much as mentioned the word "depression" or "disability" during the discussion in which plaintiff alleges she made a request for reasonable accommodation. Marcil had no knowledge that plaintiff had been suffering from depression or that she had taken leave under the FMLA for this reason. He understood that she had taken leave due to childcare issues. Facts ¶ 17. Neither did plaintiff offer any medical evidence demonstrating a need for a workplace accommodation. Indeed, she could not have, since her health care provider released the plaintiff to return to work "full time/duty" with no limitations whatsoever. Facts ¶ 45. The fact that plaintiff may have taken issue with her health care provider's opinion regarding her limitations, or lack thereof as the case may be, does not bolster the merits of her claim. *See, e.g., Davis v. Lockheed Martin Operations*

15

*Support, Inc.*, 84 F. Supp. 2d 707, 712 (D. Md. 2000) (granting summary judgment for employer where doctor's report failed to support plaintiff's request for accommodation, and explaining that an employer is not required to rely "upon the subjective belief of the individual about what her limitations are" when a physician's note "indicat[es] a lack of limitations.").

Subsequent to her telephone discussion with Marcil, plaintiff failed to contact the Human Resources department of Zale or anyone in management above Marcil to discuss her situation and alleged need for a disability-related accommodation. After speaking with Marcil, Human Resources Manager Stephanie Wheeler sent plaintiff a letter dated June 26, 2003, in which she explained the company's understanding that plaintiff was refusing to work the required store manager's schedule, and explaining that if plaintiff did not return to work by June 30, 2003, she would be considered to have voluntarily resigned her position. Facts ¶ 42. Wheeler specifically advised the plaintiff that if she had "circumstances that should be taken into consideration, please let me know before Monday, June 30, 2003." Facts ¶ 43.

Rather than contact Wheeler or anyone else at Zale to discuss her situation or provide additional information regarding her alleged disability and/or need for accommodation therefor, plaintiff instead went to a lawyer. Plaintiff states that she did not contact Zale in response to this letter because she received it on July 1, 2003, and "was under direction with [her] attorney at that time and [ ] already felt my position was terminated prior." Facts ¶ 48. The June 26 letter made clear however that plaintiff had not been terminated and explicitly invited her to discuss with Wheeler any circumstances that she believed should be taken into consideration in connection with her refusal to comply with the work schedule. If plaintiff did in fact genuinely want to return to work (as opposed to position herself for future litigation), she would have engaged Zale

16

in discussions about her condition and any legitimate need for accommodation required at work, notwithstanding that she received the letter on July 1.

Even if it could somehow be found that plaintiff requested that she be allowed to work no more than 40 hours per week as an accommodation to her substantially limiting impairment, plaintiff cannot demonstrate that such accommodation was reasonable. *See Reed*, 244 F.3d 254 (instructing that the plaintiff bears the burden of showing that any requested accommodation is reasonable); *Peebles v. Potter*, 354 F.3d 761, 769 (8th Cir. 2004) (plaintiff must show facially-reasonable accommodation including "causal connection between major life activity that is limited and the accommodation sought"). For one, her purported request that she be permitted to work less then the required hours of a store manager contained no temporal limitation. Moreover, the request would have required Zale to eliminate an essential function of the position. Plaintiff may argue that her request was reasonable because Zale could have distributed her duties to other employees. Any such argument must fail, however, since "an employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees." *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001). *See also Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998) (reassigning existing workers to assist the ADA plaintiff in her duties is not reasonable accommodation under the ADA); *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995) (an "accommodation that would result in other employees having to work harder or longer hours is not required").

The fact that plaintiff's store functioned temporarily in her absence by having other employees perform her functions while she was on leave does not alter this conclusion. An employer does not concede the reasonableness of an accommodation by virtue of having allowed the arrangement previously. *See, e.g., Phelps*, 251 F.3d at 26 ("The fact that [his employer] previously allowed Phelps to engage in a job-sharing arrangement does not obligate them to continue providing such an accommodation"); *Basith v. Cook Cty.*, 241 F.3d 919 (7th Cir. 2001).

**C.    ZALE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S ADA AND CHAPTER 151B RETALIATION CLAIMS BECAUSE SHE DID NOT ENGAGE IN PROTECTED ACTIVITY, WAS NOT SUBJECT TO AN ADVERSE EMPLOYMENT ACTION, AND EVEN PRESUMING SHE WAS, SHE CANNOT SHOW THAT ZALE'S NONDISCRIMINATORY REASON FOR THE ADVERSE ACTION ARE A PRETEXT FOR RETALIATION.**

Plaintiff alleges in her complaint that she was terminated in retaliation for requesting a reasonable accommodation. As demonstrated above, the evidence fails to show that plaintiff ever made a request for a reasonable accommodation and, therefore, a retaliation claim premised on such alleged protected conduct cannot lie. In any event, even presuming plaintiff made such a request, the record evidence fails to support a retaliation claim, as demonstrated below.

The Title VII retaliation framework, which incorporates the *McDonnell Douglas* burden-shifting analysis, applies to ADA and Chapter 151B retaliation claims. *See New England Health Care Employees' Union v. Rhode Island Legal Servs.*, 273 F.3d 425, 429 (1st Cir. 2001); *Mole v. University of Massachusetts*, 442 Mass. 582 (2004). To establish a prima facie case of retaliation, Mount must demonstrate (1) that she engaged in protected conduct, (2) that she thereafter subject to an adverse employment action, and (3) that there was a causal connection between the adverse action and the conduct. *See Soileau v. Guilford of Maine Inc.*, 105 F.3d 12, 16 (1st Cir. 1997). Presuming for purposes of the present motion that plaintiff made a request for accommodation and that such conduct constituted protected conduct, she cannot raise a triable issue of fact on the remaining elements.

**1.    Requiring Plaintiff to Work Additional Hours Did Not Constitute an Adverse Employment Action.**

The First Circuit has instructed that "[i]n a retaliation case, as in virtually any other discrimination case premised on disparate treatment, it is essential for the plaintiff to show that the employer took a materially adverse employment action against him." *Blackie v. State of*

*Maine*, 75 F.3d 716, 725 (1st Cir. 1996). The Court has explained that "[a]dverse employment

actions include demotions, disadvantageous transfers or assignments, refusals to promote,

unwarranted negative job evaluations, and toleration of harassment by other employees."

*Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 23 (1st Cir. 2002) (quotations and citations

omitted). Whether an employment action is "adverse" is gauged by an objective standard." *See

id.* Thus, "the mere fact that an employee is displeased by an employer's act or omission does

not elevate that act or omission to the level of a materially adverse employment action." *Blackie*,

75 F.3d at 725. "[A] materially adverse change in the terms and conditions of employment must

be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v.

Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Otherwise every trivial

personnel action that an irritable ... employee did not like would form the basis of a

discrimination suit." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).

　　　In the present case the alleged retaliatory action - Zale's demand that plaintiff work the 48

hour schedule expected of store managers - does not rise to the level of a materially adverse

employment action. The requirement that plaintiff work 48 hours per week would have imposed

a *de minimis* change on the hours she had been working prior to her leave. The record shows

that in the six month period prior to taking leave, plaintiff had averaged approximately 44 hours

per week. Facts ¶ 33. Thus, she was being required to work approximately 4 hours more per

week than she had been working prior to her leave. Courts have recognized that this type of

insubstantial change to an employee's work schedule does not constitute an actionable adverse

employment action. *See, e.g., Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001)

(instructing that an employer's "decision to change [a plaintiff's] working hours certainly does

not rise to the level of an adverse employment action."); *Benningfield v. City of Houston*, 157

F.3d 369, 377 (5th Cir. 1998) ("Merely changing Benningfield's hours, without more, does not constitute an adverse employment action."); *Gross v. City of Chicago*, 2005 WL 3277881, at * 3 (N.D. Ill. Nov. 29, 2005) ("The denial of an employee's request to work certain hours is not sufficient to constitute an adverse employment action."); *Craven v. Texas Dep't of Crim. Justice Inst. Div.*, 151 F. Supp. 2d 757, 765-66 (N.D. Tex. 2001) (holding denial of transfer request from morning shift to night shift was not adverse employment action because difference in working hours, alone, is not adverse employment action). The slight increase in hours that plaintiff was required to work would have constituted a *de minimis* alteration of her work schedule and thus, as a matter of law, cannot qualify as a materially adverse employment action.

Any argument by plaintiff that he was constructively discharged is similarly without merit. To prove constructive discharge, an employee must show that the "working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 54 (1st Cir. 2000). The standard is an objective one; it "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." *Id.. See also Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir. 1986) ("[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.") (internal quotation marks omitted). "An employee may not, therefore, be unreasonably sensitive to a change in job responsibilities." *Serrano-Cruz v. DFI Puerto Rico Inc.*, 109 F.3d 23, 26 (1st Cir. 1997). "An increase in work requirements that does not surpass reasonable expectations will not suffice to sustain a claim of constructive discharge." *Suarez*, 229 F.3d at 55. "An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995).

*See also Cazzola v. Codman & Shurtleff, Inc.*, 751 F.2d 53, 55 (1st Cir. 1984) (instructing that the victim of discrimination is expected to seek redress while still employed "unless actually fired, or constructively discharged due to a drastic reduction in the quality of working conditions.") (quotation and citation omitted).

Even presuming *arguendo* that Zale increased the hours plaintiff was required to work from 44 hours to 48 hours per week, such an insubstantial alteration of her schedule does not constitute the imposition of intolerable working conditions. *See Suarez*, 229 F.3d at 55; *Grube*, 257 F.3d at 728 (instructing that employer's decision to change plaintiff's working hours "certainly does not rise to the level" necessary to support constructive discharge claim).[5] Moreover, plaintiff failed to act reasonably because she abandoned her position rather than attempt to remedy the situation. Plaintiff did not contact Marcil's superior to discuss the matter. And despite the explicit invitation extended to plaintiff by HR Manager Wheeler to contact her to discuss "any circumstances that should be taken into consideration," Facts ¶ 43, plaintiff failed to do so. Rather, she simply abandoned her job. Plaintiff did not give Zale a reasonable chance to work out any problem involving discrimination and therefore a constructive discharge claim is untenable. *See, e.g.*, *West*, 54 F.3d at 498.

### 2. Plaintiff Cannot Demonstrate Pretext.

As discussed fully above in the context of plaintiff's disability claims, she cannot proffer competent admissible evidence sufficient to create a triable issue of fact that any adverse action taken by Zale was a mere pretext for unlawful retaliation. The Company's expectation that

---

[5] The court explained in *Grube*:

> [W]ere we to hold that a mere change in working hours would rise to the level of creating a condition so objectively unbearable as to allow an employee to quit and then bring a claim of constructive discharge, employers would be in a most precarious position in adapting and maintaining employee's work schedules to fit within the parameters of their business needs.

257 F.3d at 728.

plaintiff work a 48 hour schedule was legitimate and nondiscriminatory. Plaintiff's salary as store manager was premised on the expectation that she would work 48 hours a week. Facts ¶ 4. Moreover, the experience of her replacement demonstrates that the requirement was real and not merely conjured up as means to retaliate against the plaintiff for any alleged protected activity. Accordingly, even if plaintiff was subject to an adverse employment action, she cannot show that Zale's legitimate nondiscriminatory reasons for same were a mere pretext for retaliation.

**D.      ZALE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FAMILY AND MEDICAL LEAVE ACT CLAIMS.**

Counts V and VI of plaintiff's Complaint set forth claims under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), for interference and retaliation, respectively. As demonstrated herein, Zale is entitled to summary judgment on both claims.

**1.      Zale Did Not Unlawfully Interfere With Plaintiff's FMLA Rights.**

The gravamen of this claim appears to be plaintiff's allegation that Zale unlawfully "terminat[ed] [] the Plaintiff's employment during an approved leave." Complaint ¶ 54. Thus, it appears plaintiff is asserting an FMLA interference claim under 29 U.S.C. § 2615(a)(1), which prohibits actions by "any employer to interfere with, restrain, or deny the exercise of" the rights afforded by the Act. *See, e.g., Colburn v. Parker-Hannifin/Nichols Portland Div.*, 429 F.3d 325, 331 (1st Cir. 2005). To prevail on an FMLA claim asserting a violation of prescriptive rights, a plaintiff must establish five things:

> First, the worker must establish that she fit the definition of an "eligible employee." Second, the worker must establish that she worked for an employer covered by the Act. Third, the worker has to show that she qualified for FMLA benefits for one of four statutory reasons. Fourth, the worker has to prove that she gave her employer appropriate notice. Finally, the worker has to establish that the employer denied her benefits to which the FMLA entitled her.

*Wheeler v. Pioneer Dev. Servs., Inc.*, 349 F. Supp. 2d 158, 164 (D. Mass. 2004) (citations omitted). For purposes of the present motion, it is not disputed that all but the third and fifth elements are satisfied. Plaintiff's failure to satisfy these elements, however, dooms her claim.

**a.   Plaintiff cannot establish that she had a "serious health condition."**

It is axiomatic that in order for leave to be protected by the FMLA, the employee must have been entitled to the leave under the terms of the statute. In the present case, plaintiff contends she was entitled to leave because her depression constituted a "serious health condition" within the meaning of the FMLA. Plaintiff's depression fails to qualify because she did not receive the requisite treatment by a health care provider during her leave. An employee has a "serious health condition" if she has an illness, injury, impairment, or physical or mental condition that involves a period of incapacity requiring absence from work, school or other regular daily activities, of more than three calendar days, and that period of incapacity also involves "continuing treatment by a health care provider." 29 U.S.C. § 2611(11); 29 C.F.R. § 825.114(a)(2). A patient receives "continuing treatment by a health care provider" if the patient is treated "two or more times" for the injury or illness by a health care provider, or receives a single treatment by a health care provider which results in a "regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.114(a)(2)(i)(A), (B). For FMLA purposes, "treatment includes examination to determine if a serious health condition exists and evaluation of the condition." 29 C.F.R. § 825.114(b). In a recent decision involving a question of first impression among the circuit courts, the Tenth Circuit Court of Appeals held that the two or more treatments must take place during the employee's period of incapacity to meet the Act's definition of serious health condition. *See Jones v. Denver Public Schs.*, 427 F.3d 1315 (10th Cir. 2005).

In *Jones*, the plaintiff brought suit for interference with his FMLA rights following his terminated as a telecommunications technician for the defendant school district. The defendant argued that the plaintiff did not have a serious health condition because he did not receive treatment two or more times during his period of incapacity. Jones's period of incapacity had been October 1 through October 7, 2001, and he had received treatment from a health care provider once during this period, October 4, 2001, and a second time following such period, October 24, 2001. Jones argued that the regulations merely required two or more treatments without distinguishing between treatments occurring during or after the initial period of incapacity. The Tenth Circuit rejected plaintiff's position, stating that the plaintiff's "indefinite timeframe" reading of the statute "defies the text, runs counter to Congress's intent, and places employers in a position of grave uncertainty in complying with their obligations under the FMLA." 427 F.3d at 1310.

The court disagreed that the plain language of the regulation imposes no time limit on the requisite "two or more" treatments. *See id.* According to the regulation, the court explained, a serious health condition that involves continuing treatment includes "[a] period of incapacity . . . , and any subsequent treatment or period of incapacity relating to the same condition, *that also involves . . .* [t]reatment two or more times by a health care provider." *Id.* (quoting 29 C.F.R. § 825.114(a)(2)(i)) (emphasis supplied by court). The question, stated the court, "is whether the italicized phrase 'that also involves' modifies 'period of incapacity' or whether it modifies the entire phrase 'period of incapacity ..., and any subsequent treatment or period of incapacity relating to the same condition.'" *Id.* The court explained that if the two or more treatments must take place during the period of incapacity, Jones could not prevail. On the other hand, if the two

or more treatments may take place either during the period of incapacity or during any

"subsequent treatment," Jones's second session with his doctor would make him qualify. *See id.*

The court explained that the "grammatical and logical structure of the regulation" supported the

interpretation that the treatments must take place during the period of incapacity for three

principal reasons. *Id.* First, it explained that "to read the regulation as allowing one or both of

the required treatments to take place during any 'subsequent treatment' would eliminate any

necessary temporal connection between the 'period of incapacity' and the treatments." *Id.*

> If that was Congress's intention, however, the regulation could have simply required that
> the underlying medical condition "involve" both a more-than-three-day period of
> incapacity and two or more treatments, with no connection between them. That the
> regulation instead frames the definition in terms of a "period of incapacity" that
> "involves" at least two treatments indicates that the timing of the treatments, and not just
> the need for treatments, is important. … This emphasis on the "period of incapacity"
> reinforces the view that the necessary treatments must be temporally linked to that period.

*Id.* at 1320-21.

The second reason provided by the court was that "to read the phrase 'that also involves'

as modifying the combination of the period of incapacity and any subsequent treatment would

collapse the distinction between 29 C.F.R. § 825.114[(a)(2)](i)(A), which provides for

'[t]reatment two or more times,' and § 825.114[(a)(2)](i)(B), which provides for '[t]reatment by a

health care provider on at least one occasion which results in a regimen of continuing treatment

under the supervision of the health care provider.'" *Id.* at 1321.

> The latter provision contemplates the situation where the worker obtains only one
> treatment during the period of incapacity, but where that treatment results in a continuing
> regimen of treatment which extends beyond the period of incapacity. Indefinitely
> extending the timeframe for the two treatments renders subpart (B) almost entirely
> redundant: the provisions would retain independent meaning only to the extent a
> "regimen of continuing treatment" never involves "treatment." It seems odd for the
> regulation to specify the need for a full "regimen of continuing treatment" after the period
> of incapacity if a single subsequent treatment suffices.

*Id.* Third, the court explained that "the verb 'involves' (rather than 'involve') indicates that the

subject is singular ('period of incapacity'), not plural ('period of incapacity ... and any subsequent treatment')." *Id.* "To treat the entire phrase '[a] period of incapacity ..., *and* any subsequent treatment or period of incapacity relating to the same condition' as a conjunctive subject would render it plural, and would necessitate use of the plural verb 'involve.'" *Id.*

The *Jones* court noted that while no federal appellate court had considered the issue at length, its reading found support in dicta from the Eighth Circuit, which paraphrased the regulations as requiring that the plaintiff "must have had a 'period of incapacity requiring absence from work,' . . . and she must have had 'continuing treatment by . . . a health care provider' *within that period*." *Id.* at 1323 (quoting *Thorson v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000) (emphasis supplied by *Jones* court). Based on its foregoing analysis and the support found in *Thorson*, the *Jones* court held "that under the regulations defining 'continuing treatment by a health care provider,' the '[t]reatment two or more times' described in § 825.114(a)(2)(i)(A) must take place during the 'period of incapacity' required by § 825.114(a)(2)(i)." *Id.* Because Jones's period of incapacity involved only a single treatment on October 4, 2001, the court held he was not entitled to FMLA leave and could not make out a claim for FMLA interference. *See id.*

Application of the rule adopted in *Jones* to the present case leads to the conclusion that plaintiff did not have a "serious health condition" within the meaning of the FMLA and therefore cannot make out a claim for interference under the FMLA.[6] The record evinces the following timing of pertinent events involving plaintiff's treatment and incapacity:

---

[6] Zale recognizes that in *Wheeler v. Pioneer Dev. Servs., Inc.*, 349 F. Supp. 2d 158 (D. Mass. 2004), this Court concluded that the plaintiff had a serious health condition even though her treatments did not occur during the period incapacity. Zale respectfully submits that the Court should not reach the same result here because the issue of the timing of the treatments does not appear to have been a contested issue in *Wheeler*, and at the time of that decision the Court did not have the benefit of the Tenth Circuit's well-reasoned analysis. *Jones* provides persuasive legal and practical reasons for its holding and, in the absence of First Circuit precedent to the contrary, should be followed.

- On March 25, 2003, the plaintiff was first diagnosed with depression by Elston-Ferry. Facts ¶ 13.

- On April 16, 2003, plaintiff saw a therapist for an initial evaluation and assessment with respect to her depression. Facts ¶ 18.

- On April 17, 2003, Elston-Ferry completed the Certificate of Health Care Provider form indicating that plaintiff would be unable to work due to her condition for approximately six to eight weeks. Facts ¶ 19.

- On April 18, 2003, plaintiff submitted to Zale a Leave of Absence Application, requesting full-time leave due to her own serious health condition commencing April 19, 2003, along with the Certificate of Health Care Provider form completed by Elston-Ferry. Facts ¶ 20.

- On April 18, 2003, plaintiff worked a 10 ½ hour shift. Facts ¶ 21.

- On April 19, 2003, plaintiff began her FMLA leave, i.e., her "period of incapacity" commenced.

- On April 21, 2003, by its Response to plaintiff's Request For Leave of Absence, Zale informed plaintiff that her request for FMLA leave had been approved, and that her leave would be from April 19, 2003 continuing until on or about June 22, 2003. Facts ¶ 22.

- On June 22, 2003, plaintiff's FMLA leave expired.[7] Facts ¶ 27.

- On June 27, 2003, plaintiff returned to Elston-Ferry, who assessed plaintiff's depression and concluded that she was able to return to work full duty and without limitation. Facts ¶ 45.

This chronology established these indisputable and dispositive facts:

(1)  Prior to April 19, 2003, plaintiff did not experience any "period of incapacity" (i.e.,

the "inability to work … due to the serious health condition," 29 C.F.R. § 825.114(a)(2)(i)) under

the FMLA; and

(2)  During the time plaintiff was incapacitated from working and on approved leave

(April 19, 2003 - June 22, 2003), she did not visit with or receive treatment from any health care

---

[7] Plaintiff had requested and received on June 20, 2003, additional time off following the expiration of her FMLA leave as personal leave.  This was confirmed in writing by letter dated June 23, 2003. See Facts ¶ 27.

providers for her depression.[8]  Because plaintiff did not receive the requisite two or more

treatments during her period of incapacity, her depression did not constitute a "serious health

condition" entitling her to protected leave under the FMLA. *See Jones*, 427 F.3d at 1323.

### b.    Zale did not deny plaintiff any benefit to which she was entitled by the FMLA.

Plaintiff cannot establish the fifth element of her claim because she was not denied any

FMLA benefit to which she was entitled.  While plaintiff contends that Zale unlawfully

terminated her employment "during an approved leave," Complaint ¶ 54, the record evidence

establishes that such claim is without merit. As explained above, plaintiff's approved FMLA

leave commenced on April 19, 2003 and expired on June 22, 2003.  She was thereafter allowed

to remain out of work on "personal leave," as expressly stated in the June 23, 2003 letter to

plaintiff from Zale's Leave of Absence Coordinator, Janet Wells. Facts ¶ 27.  It was understood

that plaintiff's personal leave would run until June 27, 2003. Facts ¶ 28.  Plaintiff's leave

subsequent to June 22, 2003, was not job-protected FMLA leave.  It was explicitly designated as

"personal leave" by Zale, Facts ¶ 27, a designation which plaintiff did not contest.[9]  When

plaintiff failed to return to work on June 30th, she was considered to have abandoned her job and

was terminated.  Her discharge occurred more than a week after the expiration of her job-

protected FMLA leave.[10]  Because she was not on FMLA leave when terminated, as a matter of

law plaintiff's interference claim premised on this theory must fail.

---

[8] Even presuming plaintiff's period of incapacity extended to June 27, 2003, the date Elston-Ferry released her to return to work, plaintiff received treatment from a health care provider on only a single occasion during such period - her June 27 office visit with Elston-Ferry.

[9] The fact that plaintiff subsequently obtained a note from her health care provider stating that her FMLA leave should be extended to June 27, 2003 is of no moment because plaintiff failed to timely provide this note to Zale. Facts ¶ 46.

[10] Even presuming plaintiff was terminated during her June 26, 2003 telephone discussion with Marcil, this act occurred subsequent to the expiration of her FMLA leave.

**2.    Zale did Not Retaliate Against Plaintiff for Taking FMLA Leave.**

Plaintiff cannot establish the requisite elements of her FMLA retaliation claim. The *McDonnell Douglas* framework applies to FMLA retaliation claims. *See Colburn*, 429 F.3d at 335; *Hodgens v. General Dynamics Corp.*, 144 F.3d 160 (1st Cir. 1998). To make out a prima facie case of retaliation, plaintiff must show that (1) she availed herself of a protected right under the FMLA; (2) she was subject to an adverse employment action; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *See Hodgens*, 144 F.3d at 160. Even presuming arguendo that plaintiff satisfies the first element, she cannot make a sufficient showing to survive summary judgment with respect to the second and third elements of her prima facie case.

**a.    Plaintiff was not subject to an adverse employment action.**

As discussed above in the context of her ADA/Chapter 151B retaliation claims, plaintiff cannot show that she was subject to a materially adverse employment action. Plaintiff was informed that she would be required to work a 48-hour schedule when she returned to work. She flatly refused to do so and failed to report for duty, thereby abandoning her job. For the reasons discussed above, the requirement that plaintiff work a 48 hour schedule (instead of the 44 hours per week she had averaged in the six months prior to taking leave) would have imposed a *de minimis* alteration to her schedule and thus does not constitute a materially adverse employment action as a matter of law. *See, e.g., Grube*, 257 F.3d at 728; *Benningfield*, 157 F.3d at 377.

**b.    Even presuming the plaintiff was subject to an adverse employment action, she cannot demonstrate that Zale's nondiscriminatory reason for the action is a pretext for retaliation.**

As discussed fully above in the context of plaintiff's disability claims, she cannot proffer competent admissible evidence sufficient to create a triable issue of fact that any adverse action taken by Zale was a mere pretext for unlawful retaliation. The Company's requirement that plaintiff agree to the standard manager's schedule was legitimate and nondiscriminatory. Plaintiff's salary as store manager was premised on the expectation that she would work the standard 48 hour schedule. Facts ¶ 4. Moreover, the experience of her replacement demonstrates that the requirement was real and not merely conjured up as means to retaliate against the plaintiff for any alleged protected activity. Facts ¶ 54. Accordingly, even if plaintiff was subject to an adverse employment action, she cannot show that Zale's legitimate nondiscriminatory reasons for same were a mere pretext for retaliation.

Plaintiff may contend that the temporal proximity between her protected conduct and the adverse action suffices in and of itself to sustain her burden of demonstrating pretext. Any such argument fails, however, because chronological proximity, standing alone, does not establish causality where "[t]he larger picture undercuts an claim of causation." *Soileau*, 105 F.3d at 16. *See also Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (instructing that "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."). As fully discussed herein, the "larger picture" in this case undercuts any claim of causation based on temporal proximity.

## CONCLUSION

For the foregoing reasons, Defendant Zale Delaware, Inc., respectfully requests that the Court grant its motion and enter final summary judgment in its favor on all counts of the Complaint.

Respectfully submitted,

ZALE DELAWARE, INC.,

By its attorneys,
HOLLAND & KNIGHT LLP

/s/ Neal J. McNamara
Neal J. McNamara (BBO #556329)
Robert J. Crohan Jr. (BBO #652965)
One Financial Plaza – Suite 1800
Providence, RI 02903
Tel. (401) 751-8500
Fax. (401) 553-6850

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 31, 2006.

/s/ Marilyn Lovely

# 3553409_v1