Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Civil Action No.:   3:04-CV-30152-MAP


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SUSAN MOUNT,                    \*

  Plaintiff                    \*

  vs.                          \*

ZALE DELAWARE, INC.,  \*

  Defendant                    \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*




DEPOSITION OF:   STEPHANIE WHEELER

CATUOGNO COURT REPORTING SERVICES

1414 Main Street

Springfield, Massachusetts

October 24, 2005   3:25 p.m.




Kristen M. Edwards

Court Reporter

# STEPHANIE WHEELER
## October 24, 2005

Page 18

1     A.    Jamie informed me that Susan was
2  requesting to go out on leave of absence and what
3  does he need to do.
4     Q.    Did he tell you why she wanted to go
5  out on leave?
6     A.    No, he did not.
7     Q.    Pardon me?
8     A.    No, he did not.
9     Q.    So do you know why she went out on
10  leave, FMLA leave?
11     A.    No, I do not.
12     Q.    Do you know today why she went out
13  on FMLA leave or no?
14     A.    Yes.
15     Q.    Why is that?
16     A.    According to her doctor's
17  certification that she was dealing with depression
18  and also needed to take care of her son, who was
19  also dealing with depression.
20     Q.    Do you know what the depression was
21  over?
22     A.    No.
23     Q.    Did you ever know she had a death in
24  the family?

Page 19

1     A.    Yes.
2     Q.    Do you know who died?
3     A.    Her father.
4     Q.    Who told you all of this?
5     A.    Jamie.
6     Q.    Did you have any other conversations
7  with Jamie Marcil other than the two you've
8  already identified?
9     A.    Regarding Susan not working her
10  manager's schedule.
11     Q.    Is that a third conversation or was
12  that part of the second one where she was no
13  longer employed at Zale?
14     A.    It was part of the conversation and
15  her not returning to work.
16     Q.    What was said about the manager's
17  schedule?
18     A.    Jamie had received the schedule from
19  Susan, and he indicated she was only working 40
20  hours instead of 48 hours. That he had a
21  conversation with her about working the scheduled
22  hours, and she did not want to work those
23  scheduled hours.
24     Q.    Was that the extent of the

Page 20

1  conversation?
2     A.    All that I remember right now.
3     Q.    So that what you've already
4  testified to concludes the conversations you had
5  with Jamie Marcil, correct, concerning Susan
6  Mount's employment?
7     A.    That is all I remember right now.
8     Q.    What conversations did you have with
9  Vicki McGuire about Susan Mount's employment at
10  Zale; do you recall any?
11     A.    One indicating that she was on leave
12  of absence and two discussing that she had not
13  returned to work.
14     Q.    When did you have the conversation
15  with her about the leave of -- taking the leave of
16  absence?
17     A.    The time frame would have been
18  April 2003 when Susan went out on leave.
19     Q.    Right around the time that you had a
20  conversation with Jamie Marcil on the same
21  subject, right?
22     A.    Yes.
23     Q.    And the leave was granted, correct?
24     A.    Yes.

Page 21

1     Q.    By the way, could you do me a favor?
2  It's a little bit hard at times to hear you on
3  this end. Can you just speak up very clearly and
4  loudly?
5     A.    Okay.
6     Q.    Thank you. So you've identified one
7  conversation that you had with Vicki McGuire in or
8  about April of 2003. Were there any other
9  conversations that you had with her?
10     A.    I also stated having a conversation
11  with her when regarding Susan not returning to
12  work.
13     Q.    I am sorry, yes. Can you tell me
14  what was said in that conversation?
15     A.    That Susan did not return to work.
16     Q.    Was there anyone else participating
17  in this conversation or the earlier conversation
18  or was it just you and Vicki McGuire on the
19  telephone?
20     A.    Just Vicki McGuire and myself. It
21  was not on the telephone.
22     Q.    It was in person?
23     A.    Yes.
24     Q.    Is her office near yours?

6  (Pages 18 to 21)

## CATUOGNO COURT REPORTING SERVICES
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI**

**STEPHANIE WHEELER**
**October 24, 2005**

Page 22

```
 1    A.    Yes, it is.
 2    Q.    What is Vicki McGuire's job title?
 3    A.    Today it's the senior vice president
 4  of operations.
 5    Q.    What was it then?
 6    A.    Vice president of operations.
 7    Q.    Did you say anything in this second
 8  conversation with Vicki McGuire?
 9    A.    That Susan did not return to work.
10    Q.    Did you draw any conclusions or
11  decide to take any action in that regard?
12        MR. MCNAMARA: Objection.
13    Q.    (By Mr. Shea)  You can answer.
14    A.    That Susan did not return to work
15  and that she had voluntary resigned her job.
16    Q.    But you discussed that with Vicki
17  McGuire, correct?
18    A.    Yes.
19    Q.    But did you take any action as a
20  result of that conversation?
21    A.    Completed the termination paperwork
22  for Susan.
23    Q.    So do I have this right that Jamie
24  Marcil made the decision but you did the
```

Page 23

```
 1  paperwork?
 2        MR. MCNAMARA: Objection.
 3    Q.    (By Mr. Shea)  Is that correct?
 4    A.    Sorry.  I heard two things at one
 5  time.  Can you repeat?
 6    Q.    Okay.  If you hear an objection,
 7  unless you are instructed not to answer, can you
 8  answer the question; did you hear that?
 9    A.    Yes.
10    Q.    Sometimes you are going to hear an
11  objection from Attorney McNamara.  And if you do,
12  unless you hear an instruction not to answer, I'd
13  ask you to answer the question.  But the question
14  again is: As a result of that second conversation
15  with Vicki McGuire, did you take any action?
16        MR. MCNAMARA: Objection.
17    A.    Yes, I did.  I completed Susan's
18  termination paperwork.
19    Q.    (By Mr. Shea)  And there was another
20  question about Jamie Marcil and his involvement.
21  Did you -- did he make a recommendation to
22  terminate Susan Mount's employment and HR,
23  yourself and Vicki McGuire process the paperwork
24  for the termination?
```

Page 24

```
 1        MR. MCNAMARA: Objection.
 2    A.    Each of us concurred with a
 3  decision.  Jamie did not make it alone, and I
 4  processed the paperwork.
 5    Q.    (By Mr. Shea)  So basically all
 6  three of you had a vote, right?
 7        MR. MCNAMARA: Objection.
 8    Q.    (By Mr. Shea)  Is that right?
 9    A.    Sorry.  Can you repeat that?
10    Q.    All three of you had a vote
11  essentially?
12        MR. MCNAMARA: Objection.
13    A.    No, I had an opinion.
14    Q.    (By Mr. Shea)  Each of you had an
15  opinion?
16    A.    Yes.  I wouldn't characterize it as
17  a vote.
18    Q.    I am just trying to simplify things
19  here.  Did all of you have the opinion that Susan
20  Mount should be terminated?
21    A.    Yes.
22    Q.    And was it all for the same reason
23  that you believed that she did not meet the 48
24  hour rule?
```

Page 25

```
 1    A.    No.
 2    Q.    Was it for other reasons?
 3    A.    The reason for her termination is
 4  she failed to return to work.
 5    Q.    Did she -- did Susan Mount tell
 6  anyone she wasn't coming back to work?
 7    A.    I don't know.
 8    Q.    So you just believe she just
 9  didn't -- decided not to show up for work?
10        MR. MCNAMARA: Objection.
11    A.    My understanding is she did not
12  return to work.
13    Q.    (By Mr. Shea)  Do you know why?
14    A.    No, I do not.
15    Q.    Can you take a look at Exhibit 1?
16  It's called defendant's responses to first set of
17  interrogatories.  Let me know when you have that
18  in front of you.
19    A.    I have it.
20    Q.    Did you answer these
21  interrogatories; did you sign them?
22    A.    I signed it, yes.
23    Q.    So you have personal knowledge of
24  what is said in those answers I take it?
```

7  (Pages 22 to 25)

**CATUOGNO COURT REPORTING SERVICES**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI**

**STEPHANIE WHEELER**
**October 24, 2005**

Page 34

1    A.    No, I didn't say never.  There is a
2    standard of 48 hours.
3        Q.    (By Mr. Shea)  So do I read that
4    standard to mean that there is a minimum of 48
5    hours that a manager has to work in a week,
6    correct?
7            MR. MCNAMARA:  Objection.
8        A.    The manager should work 48 hours in
9    a week, yes.
10       Q.    (By Mr. Shea)  If they don't what
11   happens?
12       A.    It depends on the situation.
13       Q.    What do you mean by that?
14       A.    It means that the manager if, for
15   instance, a manager has to leave early one day and
16   they only end up working 47 hours versus, you
17   know, 48 as long as they cleared that with their
18   regional manager then it's fine.  Like it's one of
19   their hourly employees.  Like if a manager does
20   not work their schedule and it's not approved by
21   their regional manager, then they can't take
22   disciplinary action because they are not working
23   the shift.
24       Q.    And is what you just described in

Page 35

1    writing somewhere?
2        A.    Is what in writing?
3        Q.    Pardon me?
4        A.    Is what in writing?
5        Q.    What you described as the 48 hour
6    rule?
7        A.    The 48 standard requirement is in
8    the manager's job description, yes.
9        Q.    Is that requirement as you put it
10   anywhere else in a written document?
11       A.    48 hours?
12       Q.    Yes.
13       A.    It is in the written store manager's
14   job description.
15       Q.    Other than in the job description,
16   is it anywhere else?
17       A.    Not that I recall.
18       Q.    Do you know whether Susan Mount ever
19   received a copy of this job description you are
20   referring to?
21       A.    I don't know.
22       Q.    Who enforces this 48 hour rule?
23       A.    The regional manager.
24       Q.    Anybody else?

Page 36

1        A.    The people foremost the regional
2    manager or the director of stores.
3        Q.    Were there any other rules or
4    policies of Zale concerning hours per week and
5    managers other than the 48 hour rule?  And I am
6    referring to the time frame that Susan Mount
7    worked there.
8        A.    What do you mean?
9        Q.    What do I mean by my question?
10       A.    Yes, rephrase the question.  I don't
11   understand it.
12       Q.    You talked about a 48 hour rule,
13   right?
14       A.    Right.
15       Q.    A manager has to work a minimum of
16   48 hours, right?
17       A.    Right.
18       Q.    Are there any other rules concerning
19   hours to be worked by a manager that you are aware
20   of when Susan Mount worked at Zale?
21       A.    Not that I am aware of.
22       Q.    So they didn't have to work -- the
23   managers did not have to work a certain number of
24   hours on a given day or anything like that; is

Page 37

1    that fair to say?
2        A.    If there was a standard schedule for
3    managers, but it's still equal to 48 hours.
4        Q.    So managers did not have to work --
5    were not required to work a certain number of
6    hours for a certain number of days per week, were
7    they?
8        A.    On two days managers were required
9    to work a 12 hour day, and then the rest of the
10   hours were split among the other days.
11       Q.    Was that a rule of Zale?
12           MR. MCNAMARA:  Objection.
13       A.    Yes.  It goes along with the
14   standard hours managers are required to work.
15       Q.    (By Mr. Shea)  So if a manager did
16   not work two 12 hour shifts in a week, then that
17   manager was violating Zale's company policy for
18   which they could be reprimanded and/or terminated,
19   correct?
20           MR. MCNAMARA:  Objection.
21       A.    They could at the discretion of the
22   regional manager.
23       Q.    (By Mr. Shea)  So the answer is yes?
24           MR. MCNAMARA:  Objection.

10 (Pages 34 to 37)

*EXHIBIT 12*

# Zale Corporation
## Key Accountabilities

| | |
|---|---|
| **Job Title:** | Store Manager |
| **Job Code:** | 1056 |
| **Department:** | Zales, Zales Outlet, Gordon's, BBB, People's and Piercing Pagoda |
| **Reports To:** | Regional Manager |
| **Prepared By:** | P. Koob |
| **Prepared Date:** | 05/15/02 |
| **Approved By:** | |
| **Approved Date:** | |

## SUMMARY

Manage all activities required to achieve store goals including unit sales performance, personnel management, customer service, merchandise presentation, loss prevention, expense control and overall store administration.

**ESSENTIAL DUTIES AND RESPONSIBILITIES** include the following. Other duties may be assigned.

### Manage and motivate staff to achieve planned sales results.
- recruit and hire qualified job candidates; recommend hire rate commensurate with candidate experience.
- communicate job expectations and performance goals and standards
- train employees in product knowledge, service standards, policies and procedures and sales techniques appropriate for the employee's job
- conduct training programs on such topics as diversity, sexual harassment and other defined curriculum
- plan, monitor and appraise performance results; recommend merit increases
- coach, counsel and discipline employees
- initiate, coordinate and enforce systems, policies and procedures

### Serve customers and promote store sales.
- demonstrate to sales associates how to present merchandise and provide information about products, add-ons, services and payment options
- assist sales associates in greeting and assisting customers as necessary to meet service standards and sales goals
- resolve customer complaints, using discretion to balance customer satisfaction and company interests

### Hire independent jeweler as needed.

### Control store operating expenses.
- maintain staffing at approved levels
- set employee schedules and approve modifications; balance scheduled hours with sales volume to control salary and overtime expenses
- account for and secure merchandise inventory according to Company standards; verify case counts and receipt of new merchandise..
- approve discretionary merchandise markdowns
- approve discretionary return adjustments or exchanges
- approve voided register transactions

### Maintain clean and attractive store environment.
- oversee placement and display of merchandise, signage and store collateral material, ensuring that it is displayed to standard and promotional plan
- direct store staff in daily cleaning of sales floor and office areas
- arrange for maintenance of store fixtures, displays and equipment

### Prepare reports as required by Regional Manager.



EXHIBIT 12
WHEELER

C:\Documents and Settings\mpeters\Local Settings\Temp\1056 Store Manager Long Form.doc
*This document does not constitute an employment agreement between the employer and employee.*

Page 1

# Zale Corporation
## Key Accountabilities

**Maintain professional knowledge.**
- review professional publications
- monitor trends in the immediate retail environment and geographic area

## MANAGEMENT RESPONSIBILITIES

Typically supervises a staff of 3 to 10 employees in a single retail location. This job is responsible for the overall operation and sales performance of the unit. Carries out management responsibilities in accordance with the organization's policies and applicable laws.

## QUALIFICATIONS AND PHYSICAL DEMANDS *To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and/or ability required and representative of physical demands that must be met to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions*

## EDUCATION and/or EXPERIENCE

Four-year college degree or equivalent work experience

Minimum of 3 years retail sales experience, preferably with a jeweler or specialty retailer.
OR
Minimum of 2 years retail sales experience plus a minimum of 1 year retail management experience, preferably with a specialty retailer or jeweler

## LANGUAGE AND COMMUNICATION SKILLS

Ability to comprehend documents such as operating instructions and procedure manuals. Ability to write routine reports and correspondence. Ability to communicate effectively in one-on-one conversations or before small groups of customers or employees of organization.

## MATHEMATICAL SKILLS

Ability to add, subtract, multiply, and divide, using whole numbers, common fractions, and decimals. Ability to compute percent.

## REASONING ABILITY

Ability to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Ability to interpret a variety of instructions furnished in written, oral, diagram, or schedule form.

## COMPUTER SKILLS

Exposure to operation of POS terminals and scanners or familiarity with basic computer operations sufficient to learn specific Company POS systems.

## PHYSICAL DEMANDS

While performing the duties of this job, the employee is regularly required to stand, to reach with hands and arms, and to communicate with and comprehend others. The employee frequently is required to move among and between display cases and use hands to handle or feel merchandise. The employee is occasionally required to sit; and stoop, kneel or crouch. The employee must occasionally lift and/or move up to 10 pounds. The job requires visual acuity sufficient to discern differences in quality of gemstones with or without the aid of a jeweler's loupe.

Standard workweek is 48 hours, including some weekend and evening hours. Overnight travel may be required on occasion.

## WORK ENVIRONMENT

The noise level in the work environment is usually moderate.

*EXHIBIT 21*

Section: 5.12    Page: 1 of 5    Effective: 05/03/99    Revised: May 2002

# FAMILY AND MEDICAL LEAVE OF ABSENCE (FMLA)

EXHIBIT 21

WHEELER

## POLICY

The Family and Medical Leave Act (FMLA) provides eligible employees with up to 12 weeks of unpaid leave for certain family and medical reasons during a 12-month period (unless otherwise provided by state law). The FMLA leave will be paid only to the extent the employee has available sick leave, STD, personal holidays or vacation. During this leave, an eligible employee is entitled to continued group health plan coverage as if the employee had continued to work. At the conclusion of FMLA leave, an employee generally has a right to return to work in the same or a similar position subject to certain exceptions provided by law. A leave of absence form must be completed for absences of five or more consecutive scheduled days.

Note: Workers' Compensation leave will run concurrently with any company leave designated as FMLA or Personal Leave.

## GUIDELINES

### Eligibility

To be eligible for FMLA leave, an employee must have been employed for at least 1,250 hours during the 12-month period immediately preceding the commencement of the leave and have completed one year of service. The 12-month period is a rolling 12-month period measured backward from the date an employee begins any FMLA leave.

### Requirements

FMLA leave may be taken for any of the following reasons:
- The birth of the employee's child or to care for the newborn child;
- The placement of a child with the employee for adoption or foster care, or to care for the newly placed child;
- The employee's own serious health condition as defined by the Family and Medical Leave Act (FMLA); and/or
- To care for the employee's spouse, child or parent (but not in-laws) with a serious health condition.

When both spouses are employed, they are together entitled to a combined total of 12 workweeks of FMLA leave within the designated 12-month period for the birth, adoption or foster care placement of a child with the employee, for aftercare of the newborn or newly placed child, and to care for a parent with a serious health condition. Each spouse may be entitled to additional FMLA leave for other FMLA qualifying reasons (i.e., the difference between the leave taken individually for any of the above reasons and 12 workweeks, but not more than a total of 12 workweeks per person or as otherwise provided by state law).

Employees must comply with all conditions of leave, and use employee leave for the purpose for which it was granted to be eligible to return from leave.

Section: 5.13          Page: 2 of 4          Effective: 05/03/99          Revised: May 2002

# Personal Leave of Absence (non-FMLA), continued

## Request for Personal Leave, continued

Generally, personal leaves will not be granted from Thanksgiving through Christmas, unless they are of an emergency nature.

Contact your manager and the LOA coordinator 30 days prior to the leave begin date to confirm eligibility and to receive a leave of absence application. In case of an emergency situation, contact should be made as soon as possible (contact information at the end of this section).

## Required Documentation

Employees will be required to submit a LOA Application requesting the personal leave and a Certification of Health Care Provider (WH-380) if the leave is for the serious health condition of the employee or his/her family member within seven days of his/her request for leave.

During the employee's leave, the company may request that the employee provide re-certification of a serious health condition. Additionally, the employee may be required to provide the company with periodic reports regarding the employee's status and intent to return to work.

The employee's leave or his/her return to work may be delayed or denied if the appropriate documentation is not provided in a timely manner. Also, failure to provide requested documentation supporting the reason for the employee's absence from work will lead to separation of employment.

## Compensation While On Personal Leave

Personal leave is unpaid leave. Accrued benefit time must be used while on leave for the serious illness of the employee or the adoption of a child in the following order:
1. All sick hours
2. Short-term disability (may not be used for the adoption of a child)
3. Vacation hours (may reserve up to 40)
4. Personal holiday hours

Accrued benefit time must be used while on personal leave or a leave for the serious illness of an employee's spouse, child or parent as follows:
1. Vacation hours (may reserve up to 40 hours)
2. Personal holiday hours

An employee on personal leave is not permitted to be paid any company paid time off benefits if he or she is receiving workers' compensation benefits.

Section: 5.12          Page: 3 of 5          Effective: 05/03/99          Revised: May 2002

# Family and Medical Leave of Absence (FMLA), continued

## Compensation While On Leave

FMLA provides eligible employees with up to 12 workweeks of unpaid leave. If an employee has **accrued paid leave** (e.g., sick leave, STD, vacation, personal holiday or qualifies under Piercing Pagoda STD plan), the employee must use this time during leave. However, the employee may reserve up to 40 hours of vacation time. When completing the Leave of Absence Request form, the employee must indicate the amount of vacation hours that he/she would like to reserve.

Accrued benefit time must be used while on leave for the serious illness of the employee or the adoption of a child in the following order:
1. All sick hours
2. Short-term disability (may not be used for the adoption of a child) or STD as defined under Piercing Pagoda STD plan
3. Vacation hours (may reserve up to 40)
4. Personal holiday hours

Accrued benefit time must be used while on personal leave or a leave for the serious illness of an employee's spouse, child or parent as follows:
1. Vacation hours (may reserve up to 40 hours)
2. Personal holiday hours

An employee on FMLA leave is not permitted to be paid any company paid time off benefits if he/she is receiving workers' compensation benefits.

## Benefits While On Leave

During FMLA leave, an employee is entitled to continued group health plan coverage under the same conditions as if the employee had continued to work. While on FMLA leave, insurance premiums will be taken out of any paycheck the employee receives for benefit hours. **In the event that all paid benefit hours have been exhausted and the employee remains on a leave of absence, the employee will be responsible for paying the employee portion of the premiums for the remainder of the FMLA leave.**

Employee will receive a letter with coupons for submitting payment of his/her employee portion of benefit costs. If these charges are not paid on a timely basis, coverage will terminate and the employee will be given the option to continue his/her medical coverage under COBRA. If an employee fails to return from FMLA, the employee may be required to repay Zale Corporation for its share of the health insurance premium paid during the employee's leave.

*continued*

Section: 5.13          Page: 4 of 4          Effective: 05/03/99          Revised: May 2002

# Personal Leave of Absence (non-FMLA), continued

### Return to Work From Personal Leave

An employee on a leave due to his/her own serious illness must present a release to work form from his/her health care provider to the LOA Coordinator before returning to work.

If the employee's anticipated return to work date changes, the employee must provide the company with reasonable notice of his/her changed circumstances and his/her new return to work date. If the employee gives the company notice of his/her intent not to return to work, the employee will be considered to have voluntarily resigned.

**THERE IS NO GUARANTEE OF A JOB POSITION WHEN THE PERSONAL LEAVE ENDS. THE EMPLOYEE WILL BE CONSIDERED FOR ANY JOB POSITIONS OPEN AND FOR WHICH HE/SHE IS QUALIFIED. IF A JOB IS NOT AVAILABLE OR THE EMPLOYEE IS NOT INTERESTED OR QUALIFIED FOR AN AVAILABLE POSITION, THE EMPLOYEE WILL BE CONSIDERED TO HAVE VOLUNTARILY RESIGNED.**

### Extension of Leave

If an employee needs to extend his/her leave of absence, he/she must request an extension in writing before the leave of absence expires. The written request must be sent or faxed to the LOA coordinator (Fax 972-580-4690; or Mail Station 5B-1). However, under any circumstances, the maximum amount of personal leave granted to any Zale employee is one year (unless otherwise provided under state or federal law).

### Contact Information

> Zale Corporation
> ATTN: LOA Coordinator, MS 5B-1
> P.O. Box 152777
> Irving, Texas 75015-2777
>
> Fax:    972-580-4496
> Phone: 972-580-4836

Section: 5.12          Page: 5 of 5          Effective: 05/03/99          Revised: May 2002

# Family and Medical Leave of Absence (FMLA), continued

## Extension of Leave

If an employee needs to extend his/her leave of absence, the employee must request an extension in writing, before the leave of absence expires. The written request must be sent to the LOA Coordinator. However, under any circumstances, the maximum amount of time any employee may be away from Zale is one year (unless otherwise provided by state law).

If an employee is unable to return to work at the conclusion of his/her FMLA leave, an extension may be requested under the personal leave of absence policy. However, the personal leave of absence policy does not provide guaranteed job protection. If the employee does not return to work following the conclusion of FMLA leave, and a request for an extension has not been approved, the employee will be considered to have voluntarily resigned.

## Intermittent or Reduced Schedule FMLA Leave

Intermittent leave is leave taken in separate blocks of time. A reduced work schedule leave is a leave schedule that reduces an employee's usual number of hours per workday. Leave for personal illness or to care for a family member may be taken intermittently or on a reduced leave schedule when necessary. In such a case, the employee may be required to temporarily transfer to an available alternative position with equivalent pay and benefits.

Intermittent leave to care for a newborn or for a newly placed child must end within two months after the birth or placement of the child. Intermittent leave may not be taken for the birth/adoption/placement of a child unless approved in advance and in writing by the company.

If an employee takes leave intermittently or on a reduced work schedule basis, the employee must, when requested, attempt to schedule the leave so as not to unduly disrupt operations.

## Contact Information

Zale Corporation
ATTN: LOA Coordinator, MS 5B-1
P.O. Box 152777
Irving, Texas 75015-2777

Fax:   972-580-4496
Phone: 972-580-4836
Fax (Pagoda): 972-580-4690

*EXHIBIT 24*



## Zale Corporation

EXHIBIT **24**

**WHEELER**

# LEAVE OF ABSENCE APPLICATION

Application form must be sent to the Human Resources Department 30 days prior to leave. If that is not possible, you must submit this form to Human Resources as soon as possible and no later than two business days after you learn that you would need a leave of absence or intermittent or reduced schedule leave.

**PLEASE PRINT**

**Name:** _Susan Mount_  **Date:** _4-14-03_

**Home Address:** _26 Morewood Dr._  **Position:** _Manager_

_Pittsfield Ma 01201_  **Location:** _#2708 Lee_

**Telephone No.:** _413-499-3090_  **Social Security #:** _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_

**Reason:**

☐ For the birth of my child and/or to care for my newborn child.

☐ For placement of a child with me for adoption or foster care.

☐ To care for my (check one) ☐spouse ☐child ☐parent with a serious health condition. Name:_____

☑ Because my own serious health condition(s) as defined by Family and Medical Leave Act (FMLA) during the (check one ☑period of full-time leave; ☐ hours of reduced schedule leave; ☐ days/times of intermittent leave I am requesting.

☐ Military Leave

☐ Worker's Compensation Leave

☐ Jury Duty

☐ Bereavement

☐ For another reason (please specify):_____

**Type of Leave:**

☐ **Request for Full Time Leave:** I request a leave of absence from _4-19/03_ (date) to _7/1/03_ (date) for the reason(s) stated above.

☐ **Request for Reduced Schedule Leave:** I request a reduction in my normal work schedule from _____ (date) to _____ (date) because of the serious health condition(s) of my family member (named earlier) or myself. The reduced work schedule which is necessary is described or shown on the schedule, below:

| Day | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|-----|--------|--------|---------|-----------|----------|--------|----------|
| Hours | | | | | | | |

☐ **Request for Intermittent Leave:** I request leave to be absent from work periodically commencing _____ (date) through _____ (date), because of the serious health condition(s) of my family member (named earlier) or myself. The necessary time(s) I need to be off are _____

v:hr\form\LOA_appl.doc 04/08/02

000133

ZALES OUTLET2708        413  243  5684        04/18    11:23 NO.074   02/05

**Substitution of Paid Leave:**

An employee is required to use any accrued and available paid days off (i.e. sick days, STD, vacation, and personal) for their leave until the employee has:

- Exhausted any accrued paid days off, except up to 40 hours of accrued vacation; or
- Returned to work.

The Payroll Department will receive instructions to pay out your accrued and available hours during your leave, unless instructed otherwise as indicated below:

☐ Yes, I request to keep a balance of _____ (no more than 40) accrued vacation hours to be unpaid.

If an employee is receiving workers' compensation benefits, they may not be paid any additional benefits or state time loss disability benefits; they may only use their accrued paid days off, (i.e. vacation and personal) unless otherwise required by state law.

**Benefits:**     I understand that if I have health care, dental, short term disability or dependent and/or supplemental life insurance through Zale Corporation, it is my responsibility to continue payment for such insurance benefits during any period of unpaid leave.

**Verification:**     If leave is requested due to a health condition, you must attach the Certification of Health Care Provider (Form WH-380) which must be completed by your physician or other health care provider. If not available when you request leave, this Form MUST BE SUBMITTTED IN 15 DAYS.

If leave is requested for any other reason, appropriate verification of need must be submitted.

**Acknowledgment:**     I certify that my Leave of Absence Application form is accurate and truthful. I have read, understand and will comply with all conditions of leave, with all applicable leave policies (Family and Medical Leave, Personal Leave, Military Leave, Jury Duty Leave, Bereavement Leave, as applicable) and with the Attendance, Reporting Absences, and Return to Work Reporting policies in the Employee Handbook. I will promptly inform my supervisor and the Leave of Absence Coordinator of any changes in my status or need for leave. I understand that my leave of absence application may be denied or approval for my leave revoked if I do not comply with all conditions of leave. I understand that I MUST submit verification of my need for leave promptly and if I have requested leave for any health-related reason, I MUST submit a DOCTOR'S RELEASE before I return from leave. I also understand that if I do not return to work on the first work day after my leave of absence expires, I will be considered to have voluntarily terminated my employment, unless an extension has been approved by the Leave Coordinator before my leave expires.

_Sin C Govnt_                                      _4-14-03_
Employee Signature                                 Date

_James Mai_                                        _4-18-03_
SUPERVISOR                                          Date

**Approvals:**

_____                    _____
RM/DEPT Head                                        Date

SEND COMPLETED APPLICATION TO:    Zale Corporation
                                   Leave of Absence Coordinator, MS 5B-1
                                   P.O. Box 152777
                                   Irving, TX 75015-2777 or FAX: (972) 580-4496

v:\humres\LOA\Zale_appl.doc 04/05/02

000134

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



| *(When completed, this form goes to the employee, not to the Department of Labor.)* | OMB No.: 1215-0181 Expires: 07/31/03 |
|---|---|

| 1. Employee's Name  Susan Mount | 2. Patient's Name *(if different from employee)* |
|---|---|

3. Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1) _____ (2) ✓ (3) _____ (4) _____ (5) _____ (6) _____ , or None of the above _____

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Patient had physical exam on 8/25/03 which revealed a depression related to loss of father in 10/02 and problems ē son, has situational depression

5.  a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity[2] if different):

Approx date condition commenced Jan 2003 — patient has been struggling to cope ł depression has increased

   b. Will it be necessary for the employee to take work only **intermittently** or to work on a **less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

patient needs to have therapy and evaluation with psychotherapist

   If yes, give the probable duration: approx 6-8 weeks

   c. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated[2] and the likely duration and frequency of episodes of incapacity[2]:

N/A

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1996

000135

6.  a.  If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

dependent on evaluation with therapist

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

Not known

b.  If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments:

psychotherapy and possible medication trials

c.  If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

prescription drug dependent on therapist evaluation

7.  a.  If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

Yes

b.  If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c.  If neither a. nor b. applies, is it necessary for the employee to be absent from work for treatment?

000136

04/78 '03 11:24 NO.074  05/05

a. If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

*patient must also provide care to son who requires therapy although this is not primary reason for leave*

b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

c. If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

*N/A*

---

*Gabriela Endorfos*
Signature of Health Care Provider

20 Elm Street  Pittsfield MA  01201
Address

Medicine / NP
Type of Practice

413 442 1019
Telephone Number

4-17-03
Date

---

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

---

Employee Signature

Date

000137

*EXHIBIT 27*

ZALE CORPORATION

EXHIBIT 27
WHEELER

June 26, 2003

VIA FED EX

FILE
0305 25812

Ms. Susan Mount
26 Morewood Drive
Pittsfield, MA 01201

Dear Ms. Mount:

Your concern with working the manager's schedule, was brought to my attention today by your Regional Manager, Jamie Marcil.

During my conversation with Mr. Marcil, he stated that you are refusing to work the manager's schedule. Mr. Marcil explained to you that working the schedule is a requirement of your position. Mr. Marcil stated that he asked you if you were aware of the manager's required schedule and that you stated "yes," but that you were not going to work the schedule.

As a Store Manager, you are required to work the schedule the company sets for the managers. As with sales associates, it is the company that sets the work schedule not the employee. Your refusal to work the schedule will be considered your refusal to perform the requirements of your position, therefore the Company will consider your refusal a voluntary resignation.

If you do not return to work on or before Monday, June 30, ready to work your required shift, the Company will consider you to have voluntarily resigned your position effective immediately. If you have circumstances that should be taken into consideration, please let me know before Monday, June 30, 2003.

If you have any questions, you may contact Mr. Marcil or me at (972) 580-4054. Please give this matter your urgent attention.

Sincerely,

Stephanie Wheeler, PHR
Human Resource Manager
Zale Corporation

Cc:    Vicki McGuire, VP, Zales Outlet
       Jamie Marcil, Regional Manager

Dallas Executive Office: 901 W. Walnut Hill Lane Irving, Texas 75038-1003 Telephone 972/580-4000
Mail Address: P.O. Box 152777 Irving, Texas 75015-2777

000111

*EXHIBIT 28*

PERSONNEL ACTION FORM (ST5

- ☑ Personal Information Change (Sections A, F)
- ☐ Classification Change (Sections A, B, F)
- ☐ Transfer (Sections A, D, F)
- ☐ Pay Change (Sections A, C, F)
- ☐ only - LOA
- ☑ Separation (Sections A, E, F) _MA_ State

**SOCIAL SECURITY NUMBER:** 0 3 0 5 2 5 8 1 2

**EFFECTIVE DATE OF CHANGE (MM/DD/YY):** 0 6 - 3 0 - 03

## A. PERSONAL INFORMATION

**EMPLOYEE NAME** Moist (Last)  Susan (First)  (MI)

☐ Check if name Change Supporting Documentation Required

| Store/Cost Ctr Number | Store State | Brand | | | | |
|---|---|---|---|---|---|---|
| 2708 | MA | | ☑ Zales ☑ Outlet | ☐ Gordon's G.O. | ☐ Bailey's | ☐ Pagoda |

Employee's Street Address: _____ City: _____

| State | Zip Code | Home Phone ( ) | Marital Status ☐ Single ☐ Married |
|---|---|---|---|

## B. CLASSIFICATION

| FT Regular (20+ hr/wk) ☐ | PT Regular (less than 20 hr/wk) ☐ | Temp on call ☐ | Temp/Seasonal (less than 90 days) ☐ | Job Code (see back) | New Position no. (comp. use only) |
|---|---|---|---|---|---|

Current Title: _____  New Title: _____

☐ Hourly  ☐ Salary

Reason: ☐ Promotion  ☐ Demotion  ☐ Reclassification _____ (see back for specific codes)

## C. PAY RATE

Effective Date: ___/___/___ *(Must be a Friday date-MM/DD/YY)*

Prior Hourly Rate $ _____
New Hourly Rate $ _____

Prior Salary Rate $ _____ per mo.
New Salary Rate $ _____ per mo.

Reason: ☐ Adjustment  ☐ Promotion  ☐ Transfer  ☐ Demotion  ☐ Other (see back)

Annual $ _____

## D. TRANSFER

Reason (see back): _____

Current Location: _____
LY Volume _____
TY Plan _____

New Location: _____
LY Volume _____
TY Plan _____

RECEIVED
JUL 14 2003
PERSONNEL RECORDS

RM (Score) _____
Mgmt Dev Completion Date _____
RM Score _____

## E. SEPARATION

Last Day Worked: ___/___/___ (MM/DD/YY)

Eligible for Rehire ☐ Yes ☐ No

**Reason** — Voluntary (Attach resignation letter)
- ☐ Accept other Employment (AOE)
- ☑ Voluntary Resignation (VRN)
- ☐ Job Abandonment - No call/no show (JOB)
- ☐ Other (see back) _____
- ☐ Return to School (RTS)
- ☐ Retirement (RET)

**Involuntary (Requires HR Approval)**
- ☐ End of Temp Assignment (ETA)
- ☐ Unsatis. Work Performance (UWP)
- ☐ Violation of Company Policy (VIO)
- ☐ Other (see back) _____
- ☐ Job Offer Withdrawn (JOW)
- ☐ Reduction in Force (RIF)

RECEIVED
JUL 14 2003

COMMENTS: Refused to work manager's schedule and quit

## F. APPROVALS

(All changes, except personal info changes, REQUIRE RM/Dept. Head signature.)

| | Print Name | Signature | Date |
|---|---|---|---|
| Manager/Supervisor | _____ | _____ | _____ |
| RM/Dept | Jamie Marcil | Jamie Marcil | 7/12/03 |
| VP/Director | Vicki McGuire | Vicki McGuire | 7/12/03 |
| HR | S Wheeler | S Wheeler | 7/12/03 |

**HR SECTION ONLY - LOA COORDINATOR USE ONLY**  Reason Code: _____ ☐ FMLA ☐ Personal ☐ Workers' Comp

| Leave Start Date: | Expected Return Date: | Actual Return: |
|---|---|---|

COPY

Required Distribution: 1 - Fax to Payroll Services at 972-580-4109
Fax Quick Pay States Terminations to 972-580-5524
2 - Mail Original to: Payroll Services   Mail Station 6B-7

000018

EXHIBIT 28
WHEELER

SKU #10978502 (07/02)