UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SUSAN MOUNT,                        )
        Plaintiff       )
                                    )
       v.                  ) C.A. 04-30152-MAP
                                    )
ZALE DELAWARE, INC.,                )
        Defendant       )

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Docket No. 30)

July 12, 2006

PONSOR, D.J.

    Plaintiff, Susan Mount, has brought this six-count complaint against Defendant, Zale Delaware, Inc. ("Zale"), her former employer.  She charges Defendant with a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 (Count I), with retaliation based on the ADA (Count II), with a violation of Mass. Gen. Laws ch. 151(B) (Count III), with retaliation based on the same statute (Count IV), with a violation of the federal Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 (Count V), and with retaliation based upon the FMLA (Count VI).

    Defendant moved for summary judgment on all counts, and counsel appeared for oral argument on July 6, 2006.  For the reasons set forth in detail following oral argument, the court will allow Defendant's Motion for Summary Judgment, but will withhold entry of judgment to permit Plaintiff to

file a Motion for Reconsideration.

The court's reasons for its rulings may be summarized as follows.

Even upon a superficial review, this case can unfortunately only be characterized as very weak. Plaintiff, contending that she suffered discrimination and retaliation based upon disability, has conceded for the first time in her opposition to Defendant's Motion for Summary Judgment that she is not, in fact, suffering from a legally cognizable disability.  Moreover, in the face of Plaintiff's claims for a violation of the FMLA, the undisputed facts of record confirm that (a) Plaintiff was not legally entitled to leave under the FMLA because she did not suffer from a serious medical illness, (b) Defendant nevertheless gave her a full FMLA leave, and (c) Defendant offered Plaintiff her job back following the FMLA leave.

A more probing analysis of the record reveals that the weaknesses in Plaintiff's case are even more serious than a superficial review discloses.

The facts are as follows.  Plaintiff began working for Defendant in June of 1999 and became manager of Defendant's outlet store in Lee, Massachusetts, on July 29, 1999.  The undisputed facts of record confirm that the standard workweek for a Zale store manager was forty-eight hours,

with some increase in hours between Thanksgiving and Christmas.[1] In addition to the forty-eight hour workweek, store managers were expected to work increased hours over Thanksgiving and Christmas and to work two twelve-hour shifts per week.

Defendant's regional managers could afford store managers some flexibility with regard to these requirements. During the years leading up to 2002, Plaintiff typically worked more than forty hours but less than forty-eight hours per week, and the regional managers did not object.

During the fall of 2002, Plaintiff's store began to show a negative sales trend, and Plaintiff's regional manager raised concerns about this with her. Also, over the summer of 2002 Plaintiff's father's health began to decline, and he eventually died in October of 2002. Understandably, Plaintiff's father's illness and death had an impact on Plaintiff emotionally.

On March 25, 2003, Plaintiff was diagnosed with depression, and on April 7, 2003, Plaintiff met with her regional manager and informed him that she would be

---

[1] Plaintiff contends that the forty-eight hour workweek was invented by Defendant upon Plaintiff's return from her FMLA leave as a pretext for terminating her. The record does not appear to support this argument, but Plaintiff has been given leave to move for reconsideration of this ruling by pointing to facts of record that would justify a factfinder in drawing this conclusion.

requesting a leave of absence.  On April 16, 2003, Plaintiff consulted with a therapist who recommended that Plaintiff receive several weeks of therapy to deal with her depression.  On April 17, 2003, Plaintiff formally submitted her request for a FMLA leave.  This was approved immediately, and Plaintiff began her leave of absence on April 19, 2003, with the understanding that it would extend to June 22, 2003.

For reasons that are not entirely clear, despite claiming a serious health condition based upon her depression, and despite a recommendation for weekly therapy, Plaintiff never consulted with a clinician of any kind during the entire course of her FMLA leave, except for one meeting, on or about June 27, 2003, where the clinician provided Plaintiff with a note indicating that Plaintiff was able to return to work full-time and with no restrictions.

In order to qualify for a leave under the FMLA, Plaintiff must suffer from a "serious health condition" covering a period of incapacity that "involves continuing treatment by a health care provider."  29 U.S.C. § 2611 (11); see also 29 C.F.R. § 825.114(a)(2).  A patient receives continuing treatment when he or she is treated "two or more times by a health care provider."  29 C.F.R. § 825.114(a)(2)(i)(A).  The failure of an employee to obtain

treatment on at least two occasions during the FMLA leave undercuts a claim that the employee is suffering from a serious health condition.  See Jones v. Denver Pub. Sch., 427 F.3d 1315, 1323 (10th Cir. 2005).[2]

On June 20, 2003, two days before her FMLA leave was due to end, Plaintiff requested an extension of her leave to June 27, 2003.  Again, the request was approved, though there is some dispute in the record whether this extension constituted part of the FMLA leave or personal leave based on medical reasons.

In any event, during the discussions leading up to Plaintiff's return to work, Plaintiff's supervisor noticed that Plaintiff had submitted a schedule assigning herself only 39.5 hours for her first week back.  The supervisor informed Plaintiff that during her absence company policy had become stricter and that all store managers would be required to comply with the forty-eight hour workweek requirement.  No facts of record suggest that the tightening of this requirement was in any way targeted at Plaintiff or that it was not applied uniformly to all store managers.

---

[2] An employee may avoid the effect of the two-appointment requirement when he or she receives a single treatment which results in a regimen of continuing treatment under the supervision of a healthcare provider.  29 C.R.F. § 825.114 (a)(2)(i)(B).  Plaintiff does not suggest that this alternative method of demonstrating a serious health condition is available on the facts of this case.

Plaintiff protested that prior to her leave she had been permitted regularly to work less than forty-eight hours. She claims that during her discussions with the supervisor she requested that she be allowed to work less than forty-eight hours regularly as an accommodation for her problems with depression. It is significant that this request was made, despite the fact that Plaintiff had seen no medical professionals throughout her FMLA leave and had in fact received a letter confirming that she was free of any disability that would limit her capacity for work.

During the discussions, Plaintiff's supervisor indicated that he could be flexible with regard to the requirement that store managers work two twelve-hour shifts per week, but that the general forty-eight hour workweek was expected of all store managers. Plaintiff asked if her refusal to work the full forty-eight hours would mean that she would lose her job, and the supervisor replied in the affirmative.

Despite this disagreement, Plaintiff declined to resign and was told to return to work on Monday, June 30, 2003. Plaintiff did not return to work on June 30, 2003 and was thereafter terminated for what Defendant viewed as a voluntary resignation.

With regard to Counts I and III, asserting claims pursuant to the federal and state disability discrimination

statutes, no claim will lie as a matter of law on these facts. Plaintiff now concedes that she never suffered from any legally recognized disability but attempts to rescue her claim by contending, for the first time in opposition to Defendant's Motion for Summary Judgment, that she suffered discrimination based upon Defendant "regarding" her as disabled. Although this is a viable basis for a claim in some circumstances, this argument suffers from two flaws on the record before the court. First, this theory of discrimination was never offered during the administrative process, pled as part of the filings in this case, or disclosed during discovery. Second, and more importantly, no evidence of record suggests in the slightest degree that Defendant regarded Plaintiff as disabled. Indeed, it is uncontested that following her return from her FMLA leave, Defendant offered her her old job back as store manager upon the job's standard terms and conditions.

With regard to Counts II, IV and VI, asserting retaliation, the record will not support any claim of any adverse employment action directed against Plaintiff, and certainly no causal connection between any such action and Plaintiff's exercise of her rights under any applicable statute. Plaintiff argues that Defendant's refusal to offer her the same flexibility in her schedule following her FMLA

leave that she claimed she received prior to her leave might be found by a jury to constitute retaliation. This argument suffers at least three fatal defects. First, the diminution in flexibility was <u>de minimis</u>. Plaintiff was already working in excess of forty hours prior to her leave. Second, to the extent that there was a tightening of the restrictions on flexibility, the tightening took place across the board, with all store managers, and Plaintiff was not singled out. Third, as noted, no evidence of record would support a jury in concluding that any causal link existed between Plaintiff's assertion of any statutory right and the forty-eight hour workweek policy.

As to Count V, the FMLA claim, Plaintiff cannot show that she suffered from the sort of serious medical condition that justified her FMLA leave in the first place. Nevertheless, she received the leave, and even an extension of the leave at her request.

In sum, even viewing the facts of record in the light most favorable to Plaintiff here, no viable cause of action under any of the six counts can be discerned. Defendant's Motion for Summary Judgment is therefore hereby ALLOWED.

As noted above, the court will withhold ordering entry of judgment for Defendant to permit Plaintiff to submit a Motion for Reconsideration on or before August 3, 2006. At

oral argument, Plaintiff's counsel suggested that the forty-eight hour workweek and the two twelve-hour day requirements were concocted by Defendant for the first time following Plaintiff's return from her FMLA leave. Plaintiff's counsel may file a memorandum in support of the Motion for Reconsideration, showing how a reasonable factfinder could draw this conclusion based on the existing record. Defendant may file its opposition no later than September 7, 2006. If the Motion for Reconsideration is denied, the court will order entry of judgment for Defendant, and the appeal period will start to run. If the motion is allowed, the court will set the case for a status conference to determine a trial date.

   It is So Ordered.

                              /s/ Michael A. Ponsor
                              MICHAEL A. PONSOR
                              U. S. District Judge