UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SUSAN MOUNT,

        Plaintiff,

v.                                                            C.A. No. 3:04-CV-30152-MAP

ZALE DELAWARE, INC.,

        Defendant.

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION REGARDING SUMMARY JUDGMENT

Defendant Zale Delaware, Inc., hereby objects to Plaintiff Susan Mount's motion for reconsideration regarding summary judgment.

As a primary – and, frankly, dispositive – matter, Plaintiff completely misstates both the Court's requirements and her evidentiary burden necessary to overturn the Court's decision to grant summary judgment in this case. The sections of the Court's July 12, 2006 written decision relevant to the instant motion are found on pages 3 and 9. On page 3, in footnote 1, the Court wrote (emphasis added):

> Plaintiff contends that the forty-eight hour workweek was *invented* by Defendant upon Plaintiff's return from her FLMA leave as a pretext for terminating her. The record does not appear to support this argument, but Plaintiff has been given leave to move for reconsideration of this ruling by pointing to facts of record that would justify a factfinder in drawing this conclusion.

Later, in the body of opinion at page 9, the Court wrote (emphasis added):

> Plaintiff's counsel suggested that the forty-eight hour workweek and the two twelve-hour day requirements were *concocted* by Defendant *for the first time* following Plaintiff's return from her FMLA leave. Plaintiff's counsel may file a memorandum . . . showing how a reasonable factfinder could draw this conclusion based on the existing record.

10081027.1

Thus, Plaintiff must point to evidence showing *not* that the scheduling requirements were applied unevenly, or not at all, prior to her leave; *not* that she was unaware of the requirements prior to her leave; and *not* that the requirements were first applied to her following her leave, but, rather, that the scheduling requirements were *invented* or *concocted* subsequent to her leave as a pretext for her termination.

This understanding of Plaintiff's burden is further supported by the transcript of the summary judgment hearing before the Court on July 6, 2006. In response to Plaintiff's counsel's question whether it mattered to the Court that Plaintiff "never had to work the 48 . . . . [and that n]o one ever came to her and said you must work or mentioned it," the Court stated: "No . . . . What I'm interested in is the *existence* of the policy, not the *enforcement* of the policy." Summ. J. Hr'g Tr. at 43-44 (emphasis added) (attached as Exhibit A).

Despite the clear directive of the Court during oral argument and in its written decision, Plaintiff, in her Motion for Reconsideration, unabashedly attempts to move the goalposts. Plaintiff reframes her burden as follows: "[I]f a reasonable jury could infer that [the scheduling requirements were] not in place and applicable to the Plaintiff prior to her leave for depression, then the Defendant should be denied summary judgment . . . ." Pl.'s Mot. for Recons. at 1. Yet, as the Court's opinion and the hearing transcript make clear, Plaintiff's burden is nothing of the sort. Plaintiff must show that the scheduling requirements were invented by Defendant as pretext for her termination. Whether the requirements were "in place" (whatever that means) or "applicable to the Plaintiff" prior to her leave is utterly irrelevant to determination of this matter.

Plaintiff has attempted to reframe her required showing, no doubt, because the record is devoid of any evidence that the scheduling requirements were concocted by Defendant following Plaintiff's leave. Plaintiff's showing with respect to her Motion for Reconsideration merely consists of (a) evidence that she worked less than 48 hours per week under Mr. Gretzky, and was not reprimanded; (b) evidence that she worked less than 48 hours per week under Mr. Marcil, and was not reprimanded; and (c) evidence that Marcil informed her that she would have to work the required 48 hours per week and two 12-hour shifts per week upon returning from her leave. See Pl.'s Mot. for Recons. at 2-3. Plaintiff seizes on this evidence to conclude that a "reasonable jury could . . . find that the Defendant, in fact, has no such rules in place for Managers prior to the Plaintiff taking leave for depression . . . ." Id. at 3. At best, this evidence shows, in the Court's words, "that there was no strict enforcement of that requirement prior to the time that the plaintiff took her leave." Ex. A, Summ. J. Hr'g Tr. at 44. However, as the Court pointed out at the hearing, it already assumed as much for the purposes of summary judgment, and decided that Defendant's decision to enforce the requirement more strictly was insufficient to defeat summary judgment. Id. In short, Plaintiff's Motion for Reconsideration has simply failed to advance her case beyond where it stood at the hearing on July 6.

There is, of course, ample uncontroverted evidence that 48 hours per week and two 12-hour shifts were requirements, if unevenly enforced, for store managers like Plaintiff. See Def.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ¶ 4 (citing depositions of Mr. Marcil, Ms. Wheeler, and Ms. McGuire). Importantly, Plaintiff admitted at her deposition that, during her training, she was informed that "typically the

company *requires* forty-eight hours" per week for the store manager position. Pl.'s Dep. at 34-35 (emphasis added) (attached as Exhibit B).[1] This admission alone is dispositive on the issue of whether the 48 hours per week requirement *existed* prior to Plaintiff's leave, even if it was not uniformly enforced.

Further, Plaintiff's attempt to spin the testimony of Mr. Marcil and Ms. Wheeler as "contradictory" is, frankly, desperate. Ms. Wheeler testified that "[o]n two days managers were required to work a 12 hour day, and then the rest of the [48] hours were split among the other days." Pl.'s Ex. 3, Wheeler Dep. at 37. When asked if there were consequences for not adhering to the two 12-hour shift requirement, Wheeler further testified that it depended on "the discretion of the regional manager," i.e., Mr. Marcil. Id. This testimony is perfectly consistent with that of Mr. Marcil, who explained his supervision as follows: "The requirement as I understand it was 48 hours. I prefer that the manager work two 12 hour shifts so that they are there for evening coverage. If the manager decided they are not going to be able to do two 12 hour shifts and was say working nine to seven or 8:00 every night to get their total 48 hours . . . that would also be acceptable." Pl.'s Ex. 5, Marcil Dep. at 123-24. Thus, rather than being "contradictory," the testimony of both Ms. Wheeler and Mr. Marcil uniformly establishes that prior to Plaintiff's leave (1) the 48 hour workweek and two 12-hour shift requirements existed and (2) Mr. Marcil, as regional manager, had discretion to enforce them (or not) and to deal with noncompliance as he saw fit. None of this supports Plaintiff's allegations that the requirements were invented as a pretext for her termination.

---

[1] Defendant did not previously cite to or submit these pages of Plaintiff's deposition in support of its motion for summary judgment because Defendant was not aware that the *existence* of the scheduling requirements was a disputed issue until the July 6 hearing.

Additionally, Plaintiff's own testimony and legal arguments establish that prior to her return from leave, there was an increased emphasis on enforcing store managers' scheduling requirements on the part of Zale corporate management. See Pl.'s Mot. for Recons. at 3 (noting Plaintiff's testimony that she was told that "Vicki McGuire has gotten aggressive with the managers schedules."). Plaintiff has presented no evidence that the enforcement of scheduling requirements was applied only to her, and not to other store managers. In fact, the only comparator evidence in the record shows that Plaintiff's permanent replacement as store manager, Deanna Laffan, averaged over 50 hours per week. Def.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ¶¶ 51-52. Nor has Plaintiff presented any evidence supporting the notion that the requirements were "invented" or "concocted" prior to her return from leave; she has only presented evidence that corporate management decided to enforce the existing requirements more vigorously. There is, simply put, no evidence of unlawful discrimination.

For these reasons, the reasons advanced in Defendant's initial and reply memoranda submitted in support of summary judgment, and the reasons advanced by the Court in its written decision of July 12, 2006, Plaintiff's Motion for Reconsideration should be DENIED. The Court's order granting Defendant summary judgment on all of Plaintiff's counts should stand.

                                                  Respectfully submitted,
                                                  ZALE DELAWARE, INC.

                                                  By its attorneys,

                                                  NIXON PEABODY LLP

                                                  /s/ Neal J. McNamara
                                                  Neal J. McNamara (BBO #556329)
                                                  One Citizens Plaza, Suite 500
                                                  Providence, Rhode Island  02903
                                                  (401) 454-1000
                                                  (401) 454-1030 (fax)

Dated: September 1, 2006


## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 1, 2006.

                                                  /s/ Neal J. McNamara